# Union Light, Heat and Power Co. v. Young's Admr.

(Decided January 31, 1911.)

## Appeal from Campbell Circuit Court.

1. Although the wires of an electric light company may be out of order a lineman who goes up a tree to saw off a limb, which is hanging over the wire, and is warned by his foreman before going up the tree not to touch the wire, cannot recover for his injury if he touches the wire and is thus injured.

2. Where a witness who heard a part of a conversation states facts explaining why he did not hear all that was said, his testimony does not contradict other witnesses testifying to what he did not hear.

3. It is incumbent upon the electric light companies using wires which carry a deadly voltage of electricity to use the utmost care and skill in the management of its wires so as to prevent injuries to its agents as well as others whose business necessarily brings them in contact with the wires.

L. J. CRAWFORD for appellant.

ARTHUR C. HALL and W. E. GALAGHER for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Reversing.

Homer Young was a lineman in the service of the Union Light, Heat and Power Company. In July 1909 about two o'clock in the afternoon, a pole crew were engaged in putting in a new pole along one of the company's lines. After they got the pole set up, they sent for Young, as a lineman to come and adjust the line wires to the new pole. This he did. A tree stood near by close to the wires. A limb had broken off the tree and was hanging down over the wire. The foreman then asked Young if he thought he could go up there without touching the wires. Young said he thought he could. The foreman said, "All right, go ahead, but you want to watch out and don't touch the wire or it will kill you. Those are hot wires." Young started up the tree, and when he had gotten up about ten feet the foreman again said to him ,"Be sure not to touch those wires as it will kill you." He said, "All right, I will watch them." He continued up the tree and when he got within about a foot of the wires, the foreman said to him, "Watch out you are getting too close to those wires. You want to go around in the back of that tree so you won't touch them." Young said, "All right," and started to go around on the

back side of the tree, but as he did this he raised up a little and his arm came in contact with the wire. From the shock he received he fell to the pavement below, and his skull was crushed so that he died almost instantly. Such is the account of the accident as given by the foreman and all the members of the crew, who were the only persons immediately present. A woman who lived just across the street and was standing at the window looking out testified that she saw Young going towards the tree, and one of the party called out to him, "Homer, be careful of the wires," and that this was all she heard. Her son thirteen years old, who was by her, said that he heard the same thing. These were all witnesses for the defendant. The plaintiff introduced one witness who was sitting on his porch 75 or 80 feet away who said he heard nothing, adding: "They might have talked, no doubt they did when he left them, but then I wasn't paying no attention to that, and I couldn't have heard them anyway if they had given him any instructions. I don't know anything about that at all, what the instructions were or whether they gave him any or not, but they didn't give him any after he arrived at the tree." But taking the testimony of this witness as a whole, it is apparent that he was not paying special attention until the flash and report came which resulted from Young's touching the wire. Another witness introduced for the plaintiff testified that he was walking along the street, and as he passed he heard one of the party say to another, "you go up there and cut that limb." The witness adds, "and of course I didn't pay any attention to it, I just kept on walking up the street." "Q. What, if anything else, was said to him? A. Well if there had been I would have heard it. Q. Was anything else said? A. Nothing said not that I know of. Q. And if there had been you would have heard it would you? A. Yes, sir." On cross examination this witness said:

"Q. Where had you got when you first found that there had been an accident?"

"A. Well, about 60 or 75 feet or about, still going up."

"Q. Did you come back?"

"A. Yes, sir, I heard somebody holler, and I turned around and seen this fellow fall, and then came back."

On this evidence and other testimony showing the bad condition of the wires the case was submitted to a jury who returned a verdict in favor of the plaintiff for the death of Young in the sum of $8,500.00. The court

entered judgment on the verdict; the defendant appeals.

The first question arising on the appeal is whether the court should have sustained the defendant's motion for a peremptory instruction. It is its duty to keep its lines in proper condition and when they get out of order or when limbs fall across them or other troubles occur, it must have men to remedy the troubles. The linemen are employed for this purpose. It is a hazardous calling but men who follow the calling understand the danger better than others. Young was an experienced lineman. The wires as he knew carried 2,300 volts of electricity, and were palpably dangerous to life if the electricity escaped from the wires and passed through the person of a man. The instruments which Young used in climbing the tree were strapped to his legs, and where the irons touched his legs, the flesh was burned, thus showing that when his arm touched the wire, the current of electricity passed through his body into the live tree which conducted it into the ground, thus completing the circuit. While it was incumbent on the company to exercise proper care to keep its wires in condition, it was also incumbent upon it to have the wire repaired when out of order, and to have the limb removed which was pressing upon the wire and manifestly a source of danger. All that it could do when it directed Young to remove the limb, was to apprise him of the peril and if with notice of the danger, he undertook the work, the risk was his; for he could have declined to climb the tree and could have insisted that a ladder be brought or some other appliance used that would have protected him from danger. But when he undertook the work with full knowledge of the situation he took the risk. It is not material here that the limb had been hanging over the wire for a year or that for months the popping at the wire when the limb was swayed by the wind gave notice that there was a defect there. The fact that the company had delayed to remedy the trouble after notice of it, would show negligence on its part making it liable to a third person who had suffered therefrom, but it is not for this liable to a lineman who undertook to do the work and was warned not to touch the wire.

The rule in this State is that if there is any evidence the question is for the jury, and so the case comes to this, was there any evidence that Young was not warned of the danger? It was not necessary that the foreman should tell Young that the insulation was off the wire. It was only necessary that he should tell him that there

was danger in touching it, and warn him not to touch it. If there was no other evidence but the woman and her son, what they heard would be sufficient evidence of warning for the reason that Young was an experienced lineman. Anybody could see that the limb was hanging over the wire, and an experienced lineman should have anticipated that there would be danger in touching a live wire over which a limb had rested in this way for some time; for the limb in moving up and down on the wire would be likely to disturb the insulation. We have read all the evidence with great care and do not see that there is any conflict in it. The woman and her son being across the street, heard what the foreman said to Young when he was some feet from him going up the tree; but did not hear what was said when they were standing together before he started to the tree. The man who was sitting on his porch says he heard nothing that was said before Young started to the tree; he did not hear what the woman and her son heard because he was not paying attention to what was going on there. The man who was walking up the street heard the foreman tell Young to cut off the limb as he passed the crowd, but he did not hear what was said before he got to the crowd or what was said after he passed them, and the fact that he was 60 or 65 feet from them when the man hollered, explains why he did not hear what all the witnesses who were present say was said. If a witness who is present at a conversation says he did not hear certain things said, his testimony is only evidence that these things were not said when the circumstances are such as to indicate that he should have heard them if said. But the circumstances being such as to explain why this witness did not hear what was said, his testimony that he did not hear it in no manner contradicts the witnesses who did hear it. We, therefore, conclude that on the evidence the court should have instructed the jury peremptorily to find for the defendant.

The court did not err in instructing the jury that it was the duty of the defendant to exercise the utmost care and skill in the management and care of its wires so as to prevent injuries to its servants or others whose business would necessarily bring them in contact with the wires. We have in several cases approved this instruction. (O'Donnel v. Louisville, Etc., Co., 21 R., 1362; Mangan v. Louisville, Etc., Co., 122 Ky., 476; Cumberland, Etc., Co. v. Graves, 31 R., 972; Lancaster's Admr.

v. Central City, Etc., Co., 137 Ky., 355; Trout v. LaClede, Etc., Co., 132 S. W., 58.)

If on another trial there is evidence to take the case to the jury, the court in lieu of instruction D will tell the jury that if Young knew the danger or was warned not to touch the wire, he took the risk, and the jury should find for the defendant. (Lewis' Admr v. Bowling Green, Etc., Co., 135 Ky., 611; Capitol Gas, Etc., Co. v. Davis, 138 Ky., 628; Agnes Junior v. Missouri, Etc., Co., 127 Mo., 79.) In that event also so much of instruction 2 as follows the words "unless you further believe from the evidence" will be omitted and in lieu thereof these words will be inserted: "That said Homer Young knew the danger or was warned not to touch the wire as set out in instruction D."

Judgment reversed and cause remanded for a new trial.