## National Union Fire Insurance Company v. Light's Administrator, et al.

(Decided February 25, 1915.)

### Appeal from Pulaski Circuit Court.

1. Insurance—The Contract—Reformation of Insurance Policy.— Policies of insurance may be reformed when grounds therefor have been plainly made out.

2. Insurance—Estoppel—Waiver—Knowledge of Agents.—The knowledge of an insurance agent acting within the apparent scope of his authority is imputed to the insurer unless the insured was aware of such agent's limited powers.

3. Reformation of Instruments—Action—Relief.—A policy of insurance may be reformed in equity; and having acquired jurisdiction for that purpose, a court of equity will retain it in order that full and proper relief may be granted, and will enforce the policy as reformed by a decree for the payment of the loss where such decree is proper.

O. H. WADDLE & SONS for appellant.

W. M. CATRON for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

J. M. Light, a resident of Pulaski County, died intestate. There survived him the widow, Mary F. Light, and four children, Jennie Love, Della Shadoan, John S. Light and Herbert C. Light, to whom descended a parcel of land in Pulaski County on which there was a frame dwelling and smokehouse.

On February 20, 1912, the National Union Fire Insurance Company issued to Mary F. Light a policy of fire insurance in the sum of $1,150 on the dwelling, $50 on the smokehouse, and $400 on the household furniture contained in the dwelling. On July 14, 1912, the dwelling and its contents and the smokehouse were consumed by fire.

On March 1, 1913, this action in equity was instituted in the Pulaski Circuit Court by Mary F. Light's administrator (she having died after the fire) and by the children and heirs-at-law of J. M. Light, against the National Union Fire Insurance Company, seeking to reform the policy of fire insurance issued to Mary F. Light so as to make it include the interests of all the plaintiffs in the property insured thereby, and to recover on the policy when so reformed the sum of $1,600, the amount thereof.

A judgment was rendered reforming the policy so as to insure Mary F. Light against loss by fire on the household furniture in the sum of $400, and to the extent and value of her life estate in the buildings, which was found to be $170.64; and so as to insure each of the four children against loss by fire to the extent of one-fourth of the $1,200, after deducting $170.64, the value of their mother's life estate. It was further adjudged that the plaintiffs recover of the defendant insurance company according to their several interests as above stated; and from that judgment the defendant appeals.

Herbert C. Light testified that one night not long before the insurance policy was taken out, a coal of fire rolled down off of the grate and out on to the floor, burning the carpet before it could be extinguished; that his mother was about 69 years of age; and they decided to take out some fire insurance; that the next time he went to Somerset he called on Marion Mounce, an insurance agent, and informed him that Mrs. Light wanted to take out some insurance; and that Mounce came to their place the next day, at which time a written application was prepared.

This application as signed by Mrs. Light contains the following questions and answers: "No. 1. Is dwelling occupied by owner or tenant? A. Owner. No. 11. Have you a warranty deed to the land herein described and referred to? A. Yes. No. 14. How long have you owned the premises? A. 16 years."

Herbert C. Light testified that after Mounce, the agent, had written out this application, he told Mrs. Light to sign it; that "I then said, 'Mr. Mounce, in writing deeds and mortgages, everybody connected with it has to sign the paper; and will it be necessary for all the heirs of the place to sign this?' He said it would not be necessary for any one but my mother to sign the paper. He asked me how my mother came in possession of the place, and I told him that my father died and made no will as he was unconscious before he died. My mother told him if it was necessary for the children to sign the paper, that Sam and myself were there, and my sister who lived in Columbia Crossing could sign it; but Mr. Mounce told her it was not necessary for them to sign; that she would be all that was necessary."

He also testified that Mrs. Light told the agent the date when her husband bought the place.

John S. (Sam) Light, who was also present when the application was filled out, testified in substance as did his brother Herbert. It seems that not long before this insurance was effected a mortgage had been executed on the place, which mortgage was signed by the widow and children of J. M. Light, and that this circumstance prompted the inquiry made by Herbert C. Light as to whether it would be necessary for all of them to sign the application for the insurance.

Mounce, the insurance agent, testified that the answers as they appear in the application were written as made

by Mrs. Light. He admitted that Herbert C. Light was present when the application was made out and signed, and that Sam Light was also there, at least most of the time, but denied that there was any intimation given to him that Mrs. Light was not the sole owner of the property insured; he further said that Mrs. Light stated that she had a warranty deed for the property and had had it for sixteen years; and that nothing was said by any one about the children signing the application, or about any one else being interested in the property.

1. It is insisted by appellant that the evidence is insufficient to warrant the reformation of the contract, and counsel cites in support of this contention the following language from Ashmore v. Hannen, 157 Ky., 437:

"Equity will not grant relief in cases of alleged mistake except from very clear evidence; and where the fact of mistake is denied, evidence to overcome the denial must be of the most persuasive character."

We think the evidence in this case is of that quality. The insurance agent denies that any mistake was made, asserting that Mrs. Light, in the presence of her two sons, and with no motive that could possibly be conceived of, stated that she herself was the owner of the property, having held for sixteen years a warranty deed thereto, which assertion upon her part remained undenied by her sons there present. They insist that they explained the condition of the title to the property to the agent, and what motive they could have had for concealing the true status of the matter is more than we are able to understand.

This is not the usual case of one insuring property in his own name and for his own benefit when he is not the owner thereof. In this case two of the remaindermen were there present when the owner of the life estate signed the application; there presence on that occasion is admitted by the agent himself; and one of the remaindermen afterwards paid the premium with his own money and received the policy from the agent.

It is said in 34 Cyc., 925, that abundant authority establishes the fact that insurance policies are subject to be reformed when grounds therefor have been plainly made out. And in 19 Cyc., 651, that to justify reformation of an insurance contract, the mistake must have been mutual, or there must have been mistake on one side and

fraud on the other. We think the evidence in this case abundantly conforms to the requirements of these rules.

In Hartford Fire Ins. Co. v. Haas, 87 Ky., 531, 9. S. W., 720, 10 R., 573, 2 L. R. A., 64, reformation of the policy was sought and denied, but in that case the mistake was on one side only, nothing being said at the time the insurance was effected as to the nature and extent of the interest insured. And the court said that the chancellor could not enlarge the liability of the company by inserting a provision in the policy for the benefit of the children merely because the mother believed she had insured their interests as well as her own.

2. But it is insisted that Mounce, the insurance agent, had power only to receive and forward applications for insurance, and was not authorized to consummate the contract of insurance by the issual of the policy, and that, therefore, the insurance company is not bound by his mistake of fraud in connection with the placing of the insurance here involved.

It is well settled law in this State that the agent of an insurance company, acting within the apparent scope of his authority, binds the insurer, and that his knowledge of the facts is imputed to the insurer unless the insured knew of the agent's limited powers. Crawford's Admr. v. Travelers Ins. Co., 124 Ky., 733, 30 R., 943, 124 A. S. R., 425, 99 S. W., 963; Aetna Ins. Co. v. Howell, 107 S. W., 294, 32 R., 935; Manchester Assurance Co. v. Dowell, 80 S. W., 207, 25 R., 2240; Germania Ins. Co. v. Wingfield, 22 R., 457, 57 S. W., 456; R. I. U. A. v. Monarch, 98 Ky., 305; 17 R., 876, 32 S. W., 959; General Assurance Cor. v. Richardson, 157 Ky., 503. The insurance company under the circumstances here shown, therefore, cannot defeat reformation of the contract upon the ground of its agent's limited powers.

3. Finally, appellant contends that the chancellor erred in adjudging the plaintiffs a recovery upon the policy as reformed "without any proof of loss or any proof as to the value of either the personal property or real property insured, and allowing the appellant no chance to interpose any defense against recovery under any part of the policy as reformed."

It is elementary that having acquired jurisdiction of a controversy, equity will retain it in order that full and proper relief may be granted. Worley v. Tuggle, 4 Bush, 168.

There was proof in the record that the property was destroyed by fire. There was no proof as to the value of the buildings, but, under the Valued Policy Law (Ky. Stat., Sec. 700), none was necessary. As to the value of the personal property there was no proof, but there was no pleading filed or tendered and offered to be filed by defendant company denying that a recovery should not be had for the amount of the policy thereon. In fact, the defendant in its answer pleaded that it had tendered and offered to pay the administrator of Mary F. Light the sum of four hundred dollars in payment of the loss on the personal property and avows a present willingness to make such payment. Nor was there at any stage of the proceeding any pleading filed or tendered or offered to be filed setting up any other valid matter of defense.

In Pictet Spring Water Ice Co. v. Citizens Insurance Co., 24 R., 1461, 71 S. W., 514, plaintiff sued for a reformation of fire insurance policies covering certain wagons. It was alleged that by mistake the policies stated that the wagons were stored in a frame stable building and adjoining sheds instead of in a frame wagon shed building; that the agent who wrote the policies made a personal inspection of the premises, but made a mistake in writing the policies. In that case a reformation of the policies was decreed upon the ground of mistake, and, in the same action, the policies were enforced by directing a judgment to be entered on remand of the case in favor of the plaintiff for the amount of the policies sued on, in accordance with the prayer of the petition.

The case of Maryland Home Insurance Company v. Kimmell, 89 Md., 437, 43 Atl., 764, was one in which there was sought the reformation of a policy of fire insurance and recovery thereon when so reformed.

In that case, as in this, the agent of the insurance company had inspected the property and had stated the amount for which he would insure it. The court held in that case that a court of equity had undoubted jurisdiction to reform the policy, and at the same time to enforce it as reformed by administering full relief by a decree of payment of the loss where the evidence as to the extent of the loss was satisfactory; and that if defendant intended to rely upon its right to question the value its own agent placed upon the insured property, it should have set up such defense in its answer.

Judgment affirmed.