# Georgia Casualty Company v. Bond-Foley Lumber Company.

(Decided March 19, 1920.)

## Appeal from Jackson Circuit Court.

1. Insurance—Contracts—Oral Contract.—In the absence of a statute to the contrary, an oral contract of insurance, which contains all the elements essential to a contract, is valid.

2. Insurance—Insurance Contracts—Reformation.—An insurance policy may be reformed the same as other written instruments if, by reason of mutual mistake, or mistake on one side and fraud on the other, it does not conform to the real agreement.

3. Insurance—Agent—Authority.—It is within the apparent scope of the authority of an agent, with power to solicit insurance, deliver policies and collect premiums, to make an oral contract, and his act in so doing is binding on the company unless the insured knew of the limitations on his power.

4. Insurance—Agent—Authority—Insured's Knowledge of Limitation —Evidence.—In an action to reform and enforce an insurance contract on the ground that it did not conform to the real agreement made between the company and its local agent, evidence considered and held not sufficient to show that the insured had knowledge of the limited authority of the agent.

5. Insurance—Insurance Contract—Reformation—Estoppel.—Plaintiff and defendant's agent agreed on a contract of insurance covering the operation of plaintiff's logging train. The policy finally accepted by plaintiff described the risk as "transportation of logs to mill." Following the description of the risk, statement 8 of the schedule was as follows: "The assured does not operate a railroad, switch or side track in connection with the work described in the schedule except as follows." Opposite this were the words, "no exceptions." When the policy was delivered, defendant's agent assured plaintiff that the policy covered the operation of its logging train, and plaintiff did not read the provision nullifying the policy: Held, that the acceptance and retention of the policy under these circumstances did not preclude plaintiff from relying on the mistake.

J. J. GREENLEAF, H. C. CLAY and ROBERT P. JONES for appellant.

H. J. JOHNSON for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

The Georgia Casualty Company has its principal office at Macon, Georgia, and is authorized to conduct a casualty insurance business in Kentucky.

The Bond-Foley Lumber Company is the owner of a large tract of timber land in Jackson county, with its headquarters at Bond, where it operated a saw mill. Its logs are transported to the mill by a log train composed of a steam locomotive and cars operated upon a standard gauge track.

On March 15, 1915, the Georgia Casualty Company issued to the Bond-Foley Lumber Company its policy, C. E. 11252, by which it, in consideration of a premium of $2.25 per hundred, insured the lumber company against loss arising or resulting from claims against it for damages on account of bodily injuries accidently suffered, or alleged to have been suffered, by any employee, by reason of the operation of the work described in the policy as follows: "Transportation of logs to mill; saw, dimension and planing mills, lumber yards, loading and unloading; operation of tramways." Statement 8 in the schedule is as follows: "The assured does not operate a railroad, switch or side track in connection with the work described in the schedule, except as follows." Opposite this are the typewritten words, "No exceptions."

On July 9, 1915, and while the policy was still in force, Bert McDowell, an employee of the lumber company, while engaged as a brakeman on the company's logging train, was thrown from the train and severely injured. Upon the failure of efforts to adjust the claim, McDowell brought suit in the Jackson circuit court against the lumber company to recover damages. Notice of the suit was served upon the insurance company, but it declined to defend on the ground that the injury was not covered by the policy. Thereupon the lumber company employed its own counsel, and the cause was removed to the United States District Court at London. A trial before a jury resulted in a verdict for McDowell in the sum of $4,500.00 and costs.

Alleging that the contract which it made with defendant covered injuries to employees while engaged in the operation of the logging train, but that by mutual mistake, or by mistake of plaintiff and the fraud of defendant, the policy issued by the defendant did not conform to the agreement, the lumber company brought this suit

against the insurance company to reform the policy and to recover the debt, interest and costs which it has been compelled to pay McDowell, together with the attorneys' fees and other expenses incurred in making defense, the total amounting to about $6,100.00. On final hearing the policy was reformed and judgment rendered in favor of plaintiff in accordance with the prayer of the petition. Defendant appeals.

During the negotiations leading up to the issuance of the policy sued on, Messrs. Vetter & Smith were general agents for the state of Kentucky, while W. B. Respess & Company were acting as soliciting agents at Lexington. Prior to the issuance of the policy in question, Mr. Bond, the-president of the lumber company, and Mr. Dabolt, the assistant general manager, had secured through Respess & Company certain casualty indemnity policies, both for the lumber company and for the Rockcastle River Railway Company, of which Bond and Dabolt were chief officers. Prior to March 4, 1915, Mr. Bond saw W. B. Respess, a member of W. B. Respess & Company, in his office at Lexington, and told him he wanted to insure his logging operations. A. C. Respess, also a member of W. B. Respess & Company, then went to Bond and was shown the general operations of the lumber company, which included not only the saw mill, but the transporation of the logs from the woods five or six miles away. At first, Respess & Company quoted a rate of $1.30 per hundred dollars on everything but the logging train, and a rate of $9.00 per hundred on the logging train, but when A. C. Respess came to Bond, a compromise rate of $2.25 per hundred on everything was agreed on, and the contract insuring the company's operations, including its logging train, was then made. W. B. Respess says that he got this rate from Vetter & Smith, and that Vetter & Smith fully understood that the logging train operations were to be covered by the policy. On his return to Lexington, A. C. Respess prepared an application, which he forwarded by letter of March 4th, to Vetter & Smith at Louisville. The application was written by Mr. Respess on a form styled, "M. E.," and in clause 4 the risk was described as follows: "Logging in woods and loading same on cars; transportation of logs to mill, saw and planing mills, lumber yards, loading and unloading." Clause 8 of the schedule in the application was as fol-

lows: "There·are no passenger or freight or other elevators on the premises except as follows." The application was signed by W. B. Respess & Company as agents. Vetter & Smith telegraphed the home office at Macon, Georgia, to find out the proper rates, and received both telegram and letter stating that the company would require a rate of $2.25 for all logging. operations other than logging trains, and $9.00 for logging trains. Vetter & Smith then issued a policy, C. E. 11050, at a rate of $2.25 to conform to the directions of the company. Instead of writing the policy upon the M. E. form, upon which the application was written, Vetter & Smith issued a C. E. form policy in which the description of the kind of work to be done conformed 'to the application, but statement 8 of the schedule provided: "The assured does not operate a railroad, switch or side track in connection with the work described in the schedule except as follows:" "No Ex.," instead of providing as the application did "there are no passenger or freight or other elevators on the premises except as follows," opposite which nothing was written. This policy was forwarded to Respess & Company, who delivered it to the lumber company, but the lumber company declined to accept it on the ground that logging in woods and loading same on cars was being done by subcontract, and they desired to insert the words, "operation of tramways," in order that it might cover the tramways even though no logs were being transported' at the time. At the same time, Respess inserted after statement 10 of the policy, which provides, "no part of the work is subcontracted directly or indirectly, except as follows," "cutting and skidding to railway except by contract are not covered under this policy." At the same time Mr. Respess inserted in pencil under statement 4 of the policy the following: "Tramways, $500.00," and reduced the estimated compensation for the other operations to $20,000.00 per annum. Either at Bond, or immediately upon his return to Lexington, Respess prepared a second application on an M. E. form, in which the risk was described as follows: "Transportation of logs to mill, saw and planing mills, lumber yards, loading and unloading and operation of tramways," and upon this application the policy in question was written. Vetter & Smith denied that they furnished Respess & Company a compromise rate of $2.25, which was to cover all operations, including the logging train, but say that

the $2.25 rate was simply the increased rate covering the logging operations, exclusive of the logging train. They further say that they made no mistake in the policy, but purposely wrote the policy on a C. E. form, which was the proper form under the circumstances, and intentionally wrote the words, "No exceptions," opposite statement 8 saying, "The assured does not operate a railroad, switch or side track in connection with the work described in the schedule except as follows." They also testified that they would not have written a policy based on a $2.25 rate covering logging trains, and had they known that the lumber company believed or contended that the policy covered logging train operations, they would have cancelled it immediately.

In view of the conclusion of the court, it is unnecessary to determine whether Vetter & Smith, the general agents of the company who prepared the policy in question and sent it to W. B. Respess & Company for delivery, understood that the lumber company was applying for a policy covering the operation of their logging train, and by mistake or fraud inserted the words, "No exceptions," opposite the statement 8 in the schedule, which is as follows: "The assured does not operate a railroad, switch or side track in connection with the work described in the schedule except as follows."

The authorities are agreed that in the absence of a statute to the contrary, and there is none in this state, an oral contract of insurance, which contains all the elements essential to a contract, is valid. Springfield Fire & Marine Ins. Co. v. Snowden, 173 Ky. 664, 191 S. W. 439, 14 R. C. L., p. 880. It is also the rule that an insurance policy may be reformed the same as other written instruments, if, by reason of mutual mistake, or mistake on one side and fraud on the other, it does not conform to the real agreement. Springfield Fire & Marine Ins. Co. v. Snowden, *supra;* 14 R. C. L., p. 902. The evidence is clear and convincing that the officers of the lumber company and W. B. Respess & Company not only intended to make, but did make, a contract covering the operation of the lumber company's logging train, and the policy as issued would have covered such operations had it not been for the answer to statement 8. While the evidence shows that Respess & Company had no actual authority to bind the company, yet it is the rule in this

state that it is within the apparent scope of the authority of an agent, with power to solicit insurance, deliver policies and collect the premiums, to make an oral contract, and his act in so doing is binding on the company unless the insured knew of the limitation on his power. National Union Fire Ins. Co. v. Light's Admr., 163 Ky. 169, 173 S. W. 365. Bond, the place where plaintiff's lumbering operations were' conducted, is located quite a distance from the city of Lexington, where the firm of W. B. Respess & Company is engaged in business. Prior to the negotiations leading up to the issuance of the policy sued on, Messrs. Bond and Dabolt, acting for plaintiff, had obtained several policies of insurance, and they both say that they never knew that Vetter & Smith had any connection with the policies. It was further shown 'that Respess & Company frequently wrote to plaintiff on letter heads of the Georgia Casualty Insurance Company, and subscribed themselves as "general agents," and that some of these letters were sent not only to Vetter & Smith, but also to the home office at Macon. In all of the correspondence between plaintiff and defendant, there was never a suggestion that Respess & Company did not have authority to act for the defendant. It is true that Respess & Company quoted the rates given in the manual, and that the home office adjusted the claims for injuries, and that riders were sometimes attached to policies upon which appeared the names of Vetter & Smith as general agents, but we do not regard these circumstances as sufficient to charge plaintiff with notice of the limited authority of Respess & Company.

In view of the facts disclosed by the evidence, we are not disposed to hold that plaintiff's acceptance and retention of the policy precluded it from relying on the alleged mistake. It was agreed that the contract should cover the operation of the logging train. The risk described in the application and in the policy itself was "transportation of logs to mill," and "operation of tramways." Respess & Company assured plaintiff's officers that the policy covered logging trains. These officers say that they did not read statement 8 to the effect that the company was not engaged in the operation of steam railroads. Having agreed that the contract should cover the logging train, and having received the policy covering "transportation of logs to mill," and "opera-

tion of tramways,'' which anyone of ordinary prudence would construe as covering transportation of logs to mill by means of a logging train, and having been assured by Respess & Company that the policy itself did cover the logging train we are not prepared to say the company's officers were charged with notice of the answer made to statement 8, which answer was in direct conflict with the risk described in the policy, and rendered the policy ineffective for the chief purpose for which it was sought.

Judgment affirmed.