## Owens v. National Life & Accident Insurance Company.

(Decided June 17, 1930.)

T. B. CULTON, C. B. UPTON and R. L. POPE for appellant.

TYE, SILER, GILLIS & SILER for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

The appellant, Jessie Owens, was the beneficiary in an insurance policy issued by appellee on the life of her husband. It was a policy providing indemnity for loss of life by accidental means and for loss occasioned by nonfatal accidents as well as for loss of time caused by sickness. Sherman Owens, the husband of appellant, was intentionally shot and killed by a policeman in the town of Corbin. Appellant gave notice to the insurance company advising that her husband had been accidentally shot and killed by a pistol fired by another. Appellee made some investigation and deferred the payment of the amount called for by the terms of the policy, or any adjustment of the claim, until it should be determined, as the result of a trial in the prosecution of the case against the person who fired the shot, who was indicted on a criminal charge, whether the shooting was intentional or accidental. The trial resulted in the conviction of the defendant in that case, thus establishing that the shooting was intentional, as the issues made by the proof were such as to require the jury to determine whether the shooting was intentionally done. When it had been determined that the shooting of Sherman Owens was intentional and not accidental, appellee declined to pay the claim. Suit was instituted on the policy contract, and, at the conclusion of the evidence, the court directed the jury to return a verdict in favor of appellee.

The defense relied on by appellee was that, under the provisions of the policy, it was not responsible for

injuries, fatal or nonfatal, or death intentionally inflicted upon the insured by himself, or by any other person except by burglars or robbers. Under a heading "Not Covered," the policy contained a provision against liability for injuries intentionally inflicted, along with other provisions exempting the company from liability in case of accidental injury.

Appellant filed a reply in which there was an attempt to avoid the provision in the policy relied on by the company as a complete defense because the company had directed appellant to make out and submit proofs of loss after having ascertained the facts in connection with the killing of the insured, and that she incurred an expense of 50 cents in making out the proofs of loss, and, having induced her to incur expenses in the preparation of the proofs of loss, it was estopped to deny her right of recovery on the policy. It was further alleged by way of avoidance that appellee, through its officers and agents, promised to pay her the principal sum mentioned in the policy if she would wait until after the trial of the man who killed her husband, and that, acting upon the agreement that appellee would pay after the trial, she employed attorneys to prosecute the man who killed her husband and paid out $450 in connection with the prosecution which she would not have expended but for the promise of appellee that it would pay the principal sum mentioned in the policy if the slayer of her husband should be convicted. She alleged that the same promise was made by appellee more than once, and that by reason of its conduct it had waived its right to rely upon the defense of nonliability because of an intentional injury.

Further she sought to have the policy reformed, and her ground, as alleged in her reply, is that, simultaneously with the delivery of the policy to her husband, there was also a letter written by appellee and signed by one of its officers calling special attention to the policy, and stating that it covered *all* injuries accidentally sustained; that, under the construction of such provisions in policies, this court had held that the intentional shooting of another without his fault constituted an accident as to him, and that the shooting of her insured was therefore an accident, and, when the company itself advised that the policy covered *all* injuries accidentally sustained (except injuries not material here), it had the effect of changing the provisions of the policy to the

extent of making the company liable for injuries intentionally inflicted; that the fact of the writing of this letter, coupled with the promises and assurances of appellee through its agents and officers that the claim would be paid after the trial of the man who killed her husband and the advice of the company that she should employ counsel to aid in the prosecution were sufficient to authorize a court of equity to adjudge a reformation of the provisions of the policy.

There can be no reformation of a written contract such as an insurance policy unless the evidence is clear and convincing, and it can be reformed only on the ground of mutual mistake or fraud. Scott v. Spurr, 169 Ky. 575, 184 S. W. 866; Atha v. Webster, 181 Ky. 581, 205 S. W. 598; Anderson v. Sandy Valley & Elkhorn Railway Co., 171 Ky. 740, 188 S. W. 772; National Union Fire Insurance Co. v. Light's Adm'r, 163 Ky. 169, 173 S. W. 365; Lossie v. Central Trust Co., 219 Ky. 1, 292 S. W. 338; Wood's Guardian v. Inter-Southern Life Insurance Co., 224 Ky. 579, 6 S. W. (2d) 712.

There was no effect by pleading or evidence to establish fraud or mistake. The proof was directed towards establishing that the insurance company transmitted a letter along with the policy which contained statements as to injuries insured against which was in contravention of the provision relied on as a defense in this case. The letter is before us. The insured received the letter and the policy at the same time. The letter iterated and reiterated that appellee would be bound strictly by the provisions of the policy, and that the insured would likewise be bound by its provisions. The letter instructed the insured to read his policy, and, if there was anything about it that he did not understand, that he might obtain information by making inquiry of the company or of any of its officers. The letter does not establish that the contract between insurer and insured was different from that expressed in the policy itself. The only other proof on this point was directed towards proving that appellee, through its agent, had admitted its liability and would pay the policy after the trial of the man who killed insured had been completed. This proof does not contradict the terms of the policy, but, if it tended to establish any fact, it was that appellee had promised to pay the amount called for in the policy independent of the contract itself. The evidence of appellant is not such as to show that there was either mistake or fraud in connec-

tion with the making of the contract, and the letters which were written to her by the company were such as to advise her that the company was standing squarely on the provisions of the policy contract. These letters show that the position of the company was that, if it should be established that the killing of the insured was accidental, it would pay the amount called for in the policy, but, if it should be established that the injury resulting in his death was intentionally caused, it would not be bound on the policy.

Neither can the contention that the provision of the policy was waived be upheld. It is the general rule that the doctrine of waiver can be invoked only when the conduct of the insurance company has been such as to induce action or reliance upon it, and where the conduct amounts to a fraud upon the rights of the insured if the company should thereafter be allowed to disavow its conduct and enforce the provisions of the policy. Globe Mutual Fire Insurance Co. v. Wolff, 95 U. S. 326, 24 L. Ed. 387. The only proof tending to establish a waiver is the statement attributed to the agent that he said that the company would pay the policy after the trial based on the indictment had been completed. If the statement was made by the agent which is denied by him, and he is supported by other facts and circumstances, it was not a waiver of the provisions of the policy, but the making of a new agreement which was without any consideration to support it, and there is neither proof nor pleading establishing, or tending to establish, that the agent had any authority to make any such contract. No waiver is established by the proof, and there is really no conflict in the evidence. Appellant, in her testimony, detailed at some length what was said to her from time to time by the agent, but, when it is all summed up, it amounts to a statement by her that the agent promised that the policy would be paid if, upon the trial of the slayer of her husband, he was convicted. The intimation is that appellee thereby induced her to aid in bringing about a conviction of the slayer, knowing at the time that such a result would remove any prospect of liability on appellee under the terms of the policy. The letters written by appellee refuted the statement, but, if it was made, there was nothing to show any authority on the part of the agent to make any such agreement, and there could be little merit in this contention, viewing it from any standpoint.

Neither can appellant rely on estoppel by reason of the alleged statements of the agent. She was in no manner prejudiced by what he said according to her version of the statements that he made to her. She surrendered no right based upon such alleged statements. The policy contract was not changed in any particular. There is no estoppel, unless one party, by his conduct, has misled the other party to his prejudice. Kenyon Realty Co. v. National Deposit Bank, 140 Ky. 133, 130 S. W. 965, 31 L. R. A. (N. S.) 169.

Counsel for appellant rely on the case of Travelers' Insurance Co. v. Henderson (C. C. A.) 69 F. 762, but that case is against their contention. It was there held that a policy contract cannot be reformed because some agent of the insurer erroneously represented that the policy covered risks which the policy itself showed were not covered.

The statement of an agent after the delivery of the policy that it covers something not embraced by the language of the policy is neither a waiver nor an estoppel, and for that reason it was wholly immaterial that the court refused to allow appellant to testify that the agent stated after the delivery of the policy that it covered the injury sustained by her husband.

It is argued by counsel for appellant that, if there is any evidence tending to support the contention of plaintiff, a motion for a peremptory instruction should be refused. It is the general rule in this state that, if there is any evidence to support the cause of action alleged in the petition, the issue must be determined by a jury. Switchmen's Union of North America v. Johnson, 105 S. W. 1193, 32 Ky. Law Rep. 583; Union Light, Heat & Power Co. v. Young's Adm'r, 141 Ky. 805, 133 S. W. 991; Hudson v. Nolen, 142 Ky. 824, 135 S. W. 414.

There was no evidence to support the claim of appellant. What she attempted to prove neither established a new contract, an estoppel, or a waiver. The only question before the court, therefore, was whether the policy should be reformed, and there was no evidence that justified a reformation. The only other question was whether there could be a recovery on the policy as written, and it is not insisted that there could be a recovery if there could be no reformation, or if there was no estoppel or no waiver. If there had been such contention, it would have to be denied under the authority of the case

of Oak's Adm'r v. Standard Accident Insurance Co. et al., 230 Ky. 793, 20 S. W. (2d) 978, where a right of recovery was denied where death of the insured resulted from the intentional shooting of him by another not for the purpose of burglary or robbery. The provision of policy there under consideration was substantially the same as the provisions relied on as a defense in this action.

Judgment affirmed.