**EMPLOYERS LIABILITY ASSUR. CORP.,
Limited, v. JOHNSON COUNTY
ex rel. et al.**

Court of Appeals of Kentucky.

Oct. 23, 1953.

Rehearing Denied Dec. 18, 1953.

368

Hobson & Meigs, Frankfort, Joe Hobson, Prestonsburg, for appellant.

J. K. Wells, M. O. Wheeler, W. A. Johnson, Don C. Van Hoose, Paintsville, for appellees.

MOREMEN, Justice.

This is an appeal from a judgment of the Johnson Circuit Court which reformed a performance bond given by May-Bilt, Inc., as principal, and appellant, Employers Liability Assurance Corporation, Ltd., surety, to the fiscal court of Johnson County to secure a faithful performance of a contract under the terms of which May-Bilt, Inc., undertook to construct for the fiscal court two school buildings, one at Oil Springs and the other at Williamsport.

In 1949, the fiscal court advertised for bids for construction of the two buildings according to plans, specifications and contract documents, which were open to public inspection. Part six of the specifications contained a form of the contract bond that would be required, a pertinent part of which reads: "And further that the principal shall pay all lawful claims of all persons, firms, partnerships or corporations for all labor performed and material furnished in connection with the performance of the contract, and that the failure to do so with such persons, firms, partnerships or corporations will give them a direct right of action against the principal and surety under this obligation."

In August 1949, pursuant to advertisement, bid and award, the fiscal court entered into a contract with May-Bilt, Inc., to construct the two school buildings and, under its terms, May-Bilt, Inc., agreed to erect the buildings in accordance with the plans and specifications.

William H. May, who was principal owner of May-Bilt, Inc., applied to appellant, Employers Liability Assurance Corporation, Ltd., through its agents, for a performance bond in connection with the construction. He stated that W. P. Sullivan, agent for appellant, saw the specifications of the contract and Mr. Sullivan testified that it was his understanding that the type of bond to be furnished May-Bilt was to be according to the architect's specifications.

It appears that the specifications required what is known as the "broad form" while another type, which is also used in the insurance business, is known as the "narrow form." The narrow form, which was issued in this case by the appellant, contained this provision: "No right of action shall

accrue upon or by reason hereof, to or for the use or benefit of anyone other than the obligee herein named (fiscal court of Johnson County); and the obligation of the surety is and shall be construed strictly as one of suretyship only."

The bond as written was delivered to the fiscal court and there is some evidence in the record that the construction contract was read before the court authorized the signing of it. The bond was recorded in the office of the clerk of the Johnson County Court.

The contract between May-Bilt, Inc. and the fiscal court provided that 10 per cent of each progress estimate approved by the supervising architect must be retained by the fiscal court and the final 10 per cent of the contract price of $275,650 was to be paid May-Bilt, Inc., only upon final completion of the contract and approval by the supervising architect.

In August 1950, May-Bilt defaulted in the performance of the contract, was unable to meet payrolls and left unpaid claims for labor and material in the sum of approximately $44,000. Nevertheless, sometime between July 10 and August 19, 1950, the fiscal court paid to May-Bilt, Inc., the sum of $15,994.30 of the retainage which, under the terms of the contract, the fiscal court should have withheld.

Several of the materialmen filed suit against May-Bilt, Inc., for labor and material furnished in the construction of the schools and the surety was not joined as a defendant. On November 14, 1950, the fiscal court and the board of education of Johnson County, by their proper agents, filed this suit for reformation of the performance bond against May-Bilt, Inc. and Employers Liability Assurance Corporation, Ltd. The suits of the materialmen were consolidated with the instant suit.

Appellant, Employers Liability Assurance Corporation, Ltd., has assigned many errors as grounds for reversal. However, most of these alleged errors are contingent upon whether or not appellant's principal ground is sustained, to-wit: Is the judgment of reformation for mutual mistake supported by the pleading and proof? We believe the answer should be affirmative because, when the entire chain of events which led to the issuance of the performance bond is viewed in the light of rules of ordinary human conduct, it would be difficult to reach any conclusion other than that of the chancellor.

It is certain from the record that the fiscal court desired the broad form of bond contract in order that all laborers and materialmen would be protected. This is ascertained by the fact that the architect, in the specifications, set out the type of bond that would be required. It was explicit that the broad form type of bond would be needed. The premium which must be paid for either type of bond is in the same amount, so, it is not possible to assign to the contractor the motive of saving money by substituting a less expensive bond for that which was required by the contract.

Testimony offered in behalf of appellee is also persuasive that a mistake was made mutual to the parties. William May, who represented May-Bilt, Inc., in this transaction, testified that he had done business with appellant on a number of jobs and he left it to appellant to furnish the proper type of bond needed in each instance and that, although he did not furnish appellant with specifications of the contract on which May-Bilt, Inc., was bidding, Mr. W. P. Sullivan, who was a local agent for appellant, saw the specifications. It was through his insurance agency that the bond cleared.

Mr. Sullivan testified as follows:

"Q. Did such an application from May-Bilt pass through your office for a bond to cover this construction of two school buildings in Johnson County, Kentucky? A. Yes it did.

"Q. Was the application which you received and which passed through your office for the Johnson County contract bond identical or similar to the application which you received in the Anderson County bond? A. It was.

370

"Q. Would you state the difference there was in the application, if any? A. No difference.

"Q. What was your understanding as to the type bond to be furnished May-Bilt? A. I thought it was the same bond that the people applied for according to the architect's specifications."

Mr. Rice, resident manager of the Kentucky department of the appellant company, testified that to the best of his knowledge he had never been requested to write the type of bond described in the specifications, but he qualified this in answer to a question as to whether it was the company's intention to write a bond called for in these specifications: "Our intention was to write a bond that would satisfy May-Bilt and be acceptable to Johnson County."

Mr. Brown, who is branch office underwriter for appellant company, testified that he had received a telephone request from May-Bilt, Inc., to execute a performance bond and, from telephone information, he, himself, filled out an application and later the treasurer of May-Bilt signed the short form application for the bond. He did not know of the requirement of the specifications concerning the broad form of bond and used what is known as the standard performance bond of the Employers Liability Assurance Corp., Ltd.; the bond he prepared for Mr. Rice's signature was the form of bond he intended to prepare.

■ From the above, it may be seen that the only contact the state office had with appellees, other than the telephone conversation above related, during these transactions, was through their agent, W. P. Sullivan, and he had no doubt in his mind as to the type of bond required. It is true that somewhere along the line a mistake was made by the company or its agent. Sullivan, as local agent who knew the requirements of the specifications, either made the mistake in not furnishing a proper bond or someone in the other offices of the company made it. But certainly the May-Bilt company did not get the type of bond they were required to furnish to the fiscal court, which it wanted, and which the assurance company (with the exception of one person) intended for them to have. Appellant argues that Sullivan's agency was limited in character in that Sullivan was limited as to the amount of bond that he could write and, therefore, his knowledge and acts were not binding because the size of this bond greatly exceeded his authority; but this limitation as to amount is not material here because there was no limitation on his duty to furnish material facts to his company in cases of this nature. We have held a performance bond furnished by a contractor with a paid surety is in effect an insurance contract, Y.M.C.A. Assignee of Paducah v. Indemnity Insurance Co. of N. A., 244 Ky. 473, 51 S.W.2d 463; National Surety Co. v. Price, 162 Ky. 632, 172 S.W. 1072; and it is well settled in this state that the acts of an agent of an insurance company within the apparent scope of his authority bind the insurer and his knowledge of the facts is imputed to the insurer unless the insured knows of the agent's limited powers. National Union Fire Insurance Co. v. Light's Adm'r, 163 Ky. 169, 173 S.W. 365, and cases cited therein.

■ We believe the chancellor had ample, clear and convincing proof upon which to base his judgment.

■ The pleadings are sufficient to support the judgment. The petition alleged in detail the facts concerning the manner in which the fiscal court undertook to act for the school board under Chapter 162 of the Kentucky Revised Statutes; gave full details concerning the advertisement, bid and award to May-Bilt; set out verbatim the form of contract bond which would be required by the specifications; and alleged that through a mutual mistake of fact, the form of performance bond actually executed and delivered failed to contain any provision obligating the principal or its surety to pay all lawful claims for labor performed or material furnished; and that all parties thought and believed at the time of execution and delivery of the bond that all the requirements of the performance bond

called for under the specifications were contained in said bond.

■ We held in Stark v. Suttle, 181 Ky. 646, 205 S.W. 673, that in a suit for reformation on the ground of mutual mistake, a pleading is generally regarded as sufficient which alleges facts from which a mutual mistake may be readily inferred. The petition in the instant case not only meets that test but also alleges mutual mistake in terms.

Appellant contends that reformation of the instrument in question cannot be upheld because of gross negligence upon the part of the fiscal court in accepting the bond as written and not, at that time, objecting to the "narrow provision" contained in it; and relies principally on Mayo Arcade Corporation v. Bonded Floors Company, 240 Ky. 212, 41 S.W.2d 1104, 1107, which was quite different in fact from the case at bar. It was specifically pointed out in the opinion that:

"The facts in this case are very different from those in the usual cases involving reformation of contracts for mistake or fraud. The ordinary case grows out of the insertion, or the omission, of something necessary to the contract, or the ignorance of its contents, by failure of the party asking reformation to read or examine it. Quite the reverse is true in this case. The whole question here revolves around section 4, subsection A, B, and C of it. There is no argument made that the appellants did not know and understand full well the existence and contents of that section in the written contract. They rest their argument upon the evidence that the agent of the appellee's company agreed to eliminate that section, and, in lieu thereof, to guarantee the installation of the linoleum for a period of five years."

In the case at bar the mistake was not discovered until sometime after the actual receipt of the written bond. The term "mistake" carries with it a connotation of fault, but this fault is not of the character or degree which would bar a court of equity from extending its aid. If such were the case, the courts would lose the remedy of reformation in all cases where the parties had an opportunity to read the instrument.

Since we have concluded that the contract was properly reformed, it is not necessary to specifically answer a great number of the points raised by appellant in its brief, most of which apply to rights and procedures applicable to a surety's rights in cases where no right exists to directly sue the surety. The contract, as reformed, is for the benefit of all the parties in interest, and includes the right of materialmen and laborers to sue directly on the obligation of the bond as reformed. Therefore, the action of the court in permitting subcontractors and other real parties in interest to intervene was correct because, thus, a multiplicity of suits was avoided.

We have carefully examined the many points raised by appellant and find no error injurious to appellant's substantial rights. The judgment is, therefore, affirmed.