BLACKWELL'S ADM'R

v.

UNION LIGHT, HEAT & POWER CO.

Court of Appeals of Kentucky.

Dec. 4, 1953.

Rehearing Denied March 26, 1954.

McGarry & Rich, Covington, for appellant.

Blakely, Moore & Blakely, Covington, for appellee.

DUNCAN, Justice.

This action was instituted by the administrator of William Blackwell to recover damages resulting from his alleged wrongful death. Pursuant to a verdict of the jury, a judgment was rendered for appellee, Union Light, Heat and Power Company. Appellant's principal complaint relates to the giving of certain instructions and the failure to give others which were offered and refused.

The decedent was employed as an assistant crane operator by the Penker Construction Company for a period of about seven weeks prior to his death. The construction company had a contract to build a pump house in connection with the flood wall project at Newport, Kentucky. Prior to the commencement of work, an engineer employed by the construction company visited the site where the pump house was to be erected and ascertained that appellee's high tension wires, carrying 13,500 volts, would interfere with the construction. He arranged a meeting with one of appellee's engineers to discuss a relocation of the wires. At this meeting, it was decided to relocate the wires so that they would traverse a vacant lot which the construction company had obtained permission to use for storage of its material and equipment. Appellee's engineer testified that he was informed by the construction company's engineer that the vacant lot would not be used in connection with the construction. We regard that fact as unimportant, however, since the lot was actually used for storage purposes for several weeks before the accident and appellee's agents either knew or should have known of that fact. As relocated, the wires passed within forty-five feet of the corner of the pump house and were about thirty-six feet above the ground.

The handling of the material and equipment kept on the storage lot was facilitated by the use of a crane with a fifty-five foot boom. The decedent was electrocuted while attempting to attach the cable of the crane to a wire bucket located directly beneath the high tension wires. The only person who witnessed the accident was the crane operator, who testified that he and the decedent had been warned by their foreman that the wires were "hot;" that when he attempted to pick up the bucket he tried to keep the boom a safe distance from the wires, and at the time of the accident the tip of the boom was about eight or ten feet from the wires and about five or six feet above them. He also stated that on several occasions he and the decedent had, without incident, removed the bucket from the same spot. Testifying further, he related that as he slackened out the cable he looked up at the wires on at least two occasions. He further related that just as decedent was ready to attach the bucket "bluish sparks started to fly along the cable," and that as decedent started to fall down he "automatically swung the boom to the left to break the contact away from him." He stated that he did not think the cable ever actually touched the wire. It is admitted that the wires were not insulated and in that respect violated an 1896 ordinance of the City of Newport, requiring all conducting wires except those for electric railways to be covered with durable, weatherproof insulation of not less than two coatings.

 There is no dispute between the parties as to the degree of care which is required on the part of those who maintain a high voltage electric line. The duty, as often declared by the courts of this and other States, is to use the utmost care and skill to assure the safety of persons who may reasonably be expected to come in contact with their wires. Green River Rural Electric Co-op. Corporation v. Blandford, 306 Ky. 125, 206 S.W.2d 475; Union Light, Heat & Power Company v. Young's Adm'r, 141 Ky. 805, 133 S.W. 991. Utmost care means the highest degree of care, and conversely, highest degree of care means the utmost care and skill. Louisville & N. R. Co. v. Kemp's Adm'r, 149 Ky. 344, 149 S.W. 835.

 Instruction No. 1 which was given by the court informed the jury that it was the duty of appellee to use the highest degree of care to relocate and construct the

high voltage wires at the location in question so as to reasonably assure the safety of persons in the vicinity, but Instruction No. 3 incorrectly defined the highest degree of care as "the usual skill by experienced persons under the same or similar circumstances." This was clearly prejudicial, since the instructions when read together required nothing more than ordinary care.

Other complaints are made concerning Instruction No. 1, but we do not consider it necessary to discuss them at length since we will indicate further in the opinion the form of instruction which should be given in its stead.

The most difficult question in the case is whether or not the appellee was guilty of negligence per se in failing to observe the provisions of the ordinance requiring insulation, notwithstanding the fact that the record presents a contrariety of expert opinion as to whether or not wires carrying the voltage here involved may be safely or effectively insulated.

The rule that violation of an ordinance is negligence per se is of comparatively recent origin in Kentucky. At one time, the violation of an ordinance was not even evidence of negligence, but after several transitional cases, this Court, in 1937, adopted the negligence per se rule which is now in effect. Pryor's Adm'r v. Otter, 268 Ky. 602, 105 S.W.2d 564. There are certain exceptions to the rule which are not involved in this case. The problem here is whether the violation of an ordinance may ever be explained or excused to such an extent as to avoid the application of the negligence per se rule.

Without expressing an opinion as to the practicability or effectiveness of conforming with the provisions of the ordinance here involved, we may take judicial notice of the fact that there is a deplorable array of trivial, obsolete, and entirely unreasonable legislation. The fact that such provisions are not enforced cannot affect their validity, nor may the courts declare that they are not the law. Some courts have considered that they have no alternative but to treat the violation of such acts as negligence, while others have recognized that there is no compulsion by which a purely criminal statute must invariably lead to civil liability. Although there is no direct authority on the subject in Kentucky, we think the better rule would require that in the determination of its civil liability the appellee should be required to insulate only in the event it may do so safely and effectively. The determination of that fact should be left to the jury.

To meet the objections which are urged, we think the following instructions should be given on the subsequent trial in lieu of Instructions 1 and 3 as given by the court:

(1) The court instructs the jury that it was the duty of the defendant, Union Light, Heat and Power Company, to exercise the utmost care and skill to so construct and maintain its wires at the place described in the evidence, and defendant had the further duty to insulate or protect said wires by covering the same with durable, weatherproof insulation of not less than two coatings if such wires could be safely and effectively insulated, so as to make them free from danger to those who might be brought in contact with same while performing such work as could reasonably have been anticipated by the defendant. If the jury believe that the decedent at the time and place of his death, if he was electrocuted, was performing such work as could reasonably have been anticipated by the defendant, and if the jury should further believe that the defendant failed to perform any one or more of the duties required of it herein and that as a direct and proximate result of such failure, if any, the decedent, William Blackwell, came into contact with any such wire, or wires, resulting in his death, then the law is for the plaintiff, and you will find a verdict for the plaintiff. Unless you so believe, or if you believe that the defendant was guilty of contributory negligence as hereinafter defined, you will find for the defendant.

(2) "Utmost care and skill" as used in these instructions means the highest care

and skill which may be used under same or similar circumstances.

██ Appellee contends that there was no evidence of negligence on its part and the case should not have gone to the jury in any event. In view of the conflict of opinion concerning the safety and practicability of insulating the wires, and the fact that they were maintained in close proximity to the lot where decedent and other employees of the construction company were required to work, we think that there was sufficient evidence of negligence to go to the jury.

 Appellee also insists that the decedent was guilty of contributory negligence as a matter of law, and appellant contends that no instruction on contributory negligence should have been given. We do not think either argument warrants an extended discussion. The evidence is not sufficient to indicate wanton or reckless negligence on the part of the defendant. Neither was there such evidence of negligence on the part of the decedent as would justify us to conclude that he was contributorily negligent as a matter of law. The instruction on contributory negligence was properly given.

██ Appellant also complains of the admission of certain evidence interpreting the ordinance in question. Since the ordinance is plain and unambiguous on its face, such evidence was incompetent. However, it is competent to introduce evidence relating to the effectiveness, practicability, or safety of complying with its terms.

██ Appellant also insists that the court erred in refusing to admit certain testimony which appears in the record by avowal. The crane operator avowed that if permitted to testify on the subject he would state that while operating his crane elsewhere near high tension wires the electric current "jumped" from the wires to his boom. The court properly excluded this testimony, since appellant did not show that the conditions relative to the operation of the crane elsewhere were similar to the

conditions in the instant case. Moors v. Kentucky Electrical Company, 182 Ky. 825, 208 S.W. 15. The conditions may have been greatly dissimilar. For example, the amount of voltage carried by the high tension wires in the two situations may have greatly varied.

For the reasons indicated, the judgment is reversed for proceedings consistent with this opinion.

MILLIKEN, J., not sitting.