## UNITED STATES FIDELITY & GUARANTY CO. v. SOUTHLAND LIFE INS. CO.*

Circuit Court of Appeals, Fifth Circuit.
December 8, 1927.

No. 5068.

1. **Insurance** ☜435—**Tearing down and replacing interior walls, substituting new flooring and window frames, and installing vault held "structural changes," within indemnity insurance policy; "structure."**

Under indemnity insurance policy, granting privilege to insured to make necessary repairs and ordinary alterations, but requiring written permit for making alterations or additions of structural character, *held* that, where insured changed interior of entire fifth floor, by tearing down interior walls and erecting new ones, removing wooden flooring and substituting concrete, and substituting steel window frames and sashes for wooden ones, and installed entire new vault, such changes constituted "structural alterations," within meaning of policy, absolving insurer from liability where written permit therefor was not granted; "structure" being used to describe any product or piece of work artificially built up or composed of parts joined together in some definite manner.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Structure.]

2. **Insurance** ☜664—**Admission of statement of insurer's agent, several years prior to issue of indemnity policy and suit, held error.**

Under provisions of indemnity insurance policy that nothing said or done by insurance agent before or after date of policy, which is not added to policy by indorsement of official, would change policy or waive conditions, *held*, that admission of testimony that, several years prior to issue of policy and suit, agent of insurer had stated that structural changes similar to one involved in present suit could be made without indorsement was error.

In Error to the District Court of the United States for the Northern District of Texas; William H. Atwell, Judge.

Action by the Southland Life Insurance Company against the United States Fidelity & Guaranty Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded for new trial.

Will R. Harris, of Dallas, Tex. (W. R. Harris and Thompson, Knight, Baker & Harris, all of Dallas, Tex., on the brief), for plaintiff in error.

*Rehearing denied January 7, 1928.

W. H. Flippen and John T. Gano, both of Dallas, Tex., for defendant in error.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. This was an action by the defendant in error (herein called the insured) against the plaintiff in error (herein called the insurer) on a policy of insurance whereby the insurer agreed to indemnify the insured against loss arising or resulting from claims made upon the insured for damages on account of bodily injuries, including death, at any time resulting therefrom, suffered or alleged to have been suffered as the result of an accident occurring while the policy is in force, " * * * by any person or persons not employed by the assured while within or upon the premises stated in the schedule, or upon the sidewalks, ways, or premises adjacent thereto, except that accidents caused by drivers and chauffeurs and their helpers are excluded when occurring away from the premises as described in the schedule." By its terms the policy was subject to the following conditions:

"The company's liability for loss from an accident resulting in bodily injuries to or in the death of one person is limited to ten thousand and no/100 ($10,000) dollars. * * * Privilege is granted under this policy to make such repairs and ordinary alterations as are necessary to the care of the premises and their maintenance in good condition, including ordinary repairs of the elevator and escalator plant and the renewal of its existing mechanical equipment, but this policy does not cover on account of injuries or death caused to or by any person engaged in the making of alterations or additions of a structural character, unless a written permit is granted by the company specifically describing the work, and an additional premium paid therefor. * * * No erasure or change appearing on this policy as originally printed and no change or waiver of any of its terms or conditions or statements, whether made before or after the date of this policy, shall be valid unless set forth in an indorsement added hereto and signed by the president, a vice president, or one of the secretaries of the company. Notice given to or the knowledge of any agent or any other person, whether received or acquired before or after the date of this policy, shall not be held to waive any of the terms or conditions or statements of this policy or to preclude the company from asserting any defense un-

der said terms, conditions and statements, unless set forth in an indorsement added hereto and signed by the president, a vice president, or one of the secretaries of the company."

[1] The claim asserted was based on the death of R. L. Mayer, resulting from a window weight falling upon him from a window in the fifth story of the insured's reinforced concrete building of 10 stories and a basement, being the premises stated in the schedule, while he was on the sidewalk adjacent to that building, and while workmen were engaged in putting steel frames in that window in place of the wood frames which previously had been therein, and the payment by the insured to the family of the deceased of more than $10,000 in settlement of the claim for damages for his injuries and death. Evidence without conflict showed the following:

The insured's above-mentioned building is of the reinforced skeleton concrete type, the interior walls of which are carried by beams, there being no load carrying interior walls, with the result that interior partition walls can be removed and other walls constructed at different places without affecting the strength or safety of the building. Upon a former tenant vacating the fifth floor of that building, the insured, for the purpose of making that floor suitable for the use of one of its departments and of its general attorneys, made changes in that floor which included tearing down the interior walls, which were made of gypsum tile, erecting new interior partition walls, so as to divide the space on that floor into rooms, hallways, etc., different in arrangement and size from those formerly existing on that floor, erecting a record room or vault, the interior walls of which were made of hard tile, changing the two outside windows in the space occupied by the vault, by taking out the wooden frames and sashes which had been in those windows, and substituting metal frames and sashes, substituting wire glass for the ordinary glass which had been in those windows, removing the wooden flooring which before was in the space occupied by the vault, and making the floor in that space of concrete. The changing of the frames, sashes, and glass of those windows was made in order to render the vault fireproof.

The changes made amounted to rebuilding the entire interior of the fifth floor. Before those changes were started, that floor as it previously existed was in good condition, needing no repairs. The death of R.

L. Mayer occurred, as above stated, while workmen were engaged in hanging the window weight in the metal frame of one of the windows in the vault. Over the insurer's objection the court permitted a witness for the insured to testify as follows with reference to what occurred several years ago, prior to the issue of the policy in suit, when the insured was ready to make similar changes in the second floor of its building:

"When we got ready to make the changes, we went to Seay & Hall's office, who wrote the policy. As I did all my business with Mr. McCain, I went to him, and he wasn't in, as I remember. I went to the defendant company, and some one was in the office and came forward and asked me what I wanted. I told him I wanted to get permission to change the second floor. It was a pretty big job. He took the policy, and looked at it, and says: 'You don't need an indorsement.'"

The insurer excepted to the action of the court in submitting to the jury the question as to whether the changes which were being made by the insured on the fifth floor of its building at the time of the above-mentioned casualty were such repairs and ordinary alterations as were necessary to the care of the premises and their maintenance in good condition, and to the following part of the court's charge to the jury:

"The question of fact for your solution is not without difficulty. Able lawyers disagree about it. Able and reputable concerns disagree about it. But, taking into consideration the whole, that is an office building, a building recognized by both parties as an office building, a building in which there were offices for occupancy, and for letting, the undisputed facts that this building, a number of stories in height, was of concrete construction, or what is known as reinforced concrete construction, carrying its weight upon outside forms, and upon pillars, and uprights, and not upon floors, whether in a building of that sort, for that purpose, the desire of the insured to so change partitions and halls as to accommodate the tastes of incoming or outgoing tenants, and which changes or alterations did not in any degree weaken the strength of the main body of the building, whether or not that sort of work, which was being done at this time, consisting wholly of internal changes, whether or not that was such repairs as comes within this exception, is for your answer, namely, whether that sort was such repairs and ordinary alterations as are necessary to the care of the premises and their maintenance in good

condition, etc. If it was, and if they were, and you believe that to the degree I have indicated to you, then it would be your duty to find for the plaintiff. If you do not so believe, or if you do not find it to the degree I have indicated, then you will find for the defendant."

The next to the last above set out provision of the policy sharply distinguishes between "such repairs and ordinary alterations as are necessary to the care of the premises and their maintenance in good condition," and "the making of alterations or additions of a structural character." Plain language of that provision shows that, in the absence of the granting of the prescribed permit, the policy was not to "cover on account of injuries or death caused to or by any person engaged in the making of alterations," unless those alterations are "necessary to the care of the premises and their maintenance in good condition."

As the evidence without conflict showed that the fifth floor of the insured's building, as it was before the above-mentioned changes were made, was in good condition and needed no repairs, and that those changes were made, not because they were necessary to the care of the premises and their maintenance in good condition, but for the purpose of making that floor suitable for uses different from those to which previously it was put, there seems to be no substantial basis for a contention that, in the absence of the granting of the prescribed permit, the insurer was liable under the policy for a death caused by a person engaged in making those alterations. Furthermore, we are of opinion that the above-mentioned changes in the fifth floor of the building involved "the making of alterations or additions of a structural character," within the meaning of the provision in question.

Evidently the just-quoted language was intended to cover alterations other than "such * * * ordinary alterations as are necessary to the care of the premises and their maintenance in good condition." The word "structure" is used to describe any production or piece of work artificially built up, or composed of parts joined together in some definite manner. 37 Cyc. 337. The entirely new vault was none the less a structure because it was erected in an already existing building. Lewis v. State, 69 Ohio St. 473, 69 N. E. 980; Home Mixture Guano Co. v. Ocean Accident & G. Corp. (C. C.) 176 F. 600. The changes made in windows of the building, by substituting steel frames and

sashes for wooden ones, and wire glass for ordinary glass, for the purpose of making the vault fireproof, were changes of component parts of the building as it previously existed, and were structural alterations, within the meaning of the provision in question. It follows that the court erred in giving to the jury the above-mentioned instructions.

[2] Under the last above set out provision of the policy, nothing done or said by an agent of the insurer, before or after the date of the policy, which is not set forth in an indorsement signed by a named official and added to the policy, was effective to change the policy, to waive a condition thereof, or to preclude the insurer from setting up any defense under its terms. Fire Association of Philadelphia v. Nime (C. C. A.) 9 F.(2d) 28. It follows that the court erred in admitting, over the insurer's objection, the above set out statement of a witness for the insured.

Because of the above-mentioned errors, the judgment is reversed, and the cause is remanded for a new trial.

Reversed.