## Lee v. Hartford Fire Insurance Company.

(Decided March 13, 1928.)

### Appeal from Bullitt Circuit Court.

1. Insurance.—Provisions in insurance policies against subsequent incumbrances, not being controlled by Ky. Stats., sec. 639, making certain representations warranties, fact that proceeds of debt, for which insured gave mortgage after issuance of policy, were used in improvement of property, did not destroy effect of such provisions.

2. Insurance.—If insurance policy, by mutual mistake or mistake of one party and fraud of the other, does not conform to prior valid agreement for insurance, it may be reformed in a court of equity.

3. Reformation of Instruments.—It requires clear and convincing evidence to authorize reformation of insurance policy for nonconformity with prior agreement because of mutual mistake or mistake of one party and fraud of other.

4. Insurance.—Application for insurance implies an offer for insurance, to be accepted or approved by insurance company, which is not precluded from stating terms on which it will accept insurance.

5. Insurance.—In absence of claim that soliciting agent made any representations that policy would be issued without subsequent incumbrance clause, or that policy is at variance with his statements or evidence that insurer intended to issue policy without such clause, it cannot be reformed by striking such clause on ground of fraud or mutual mistake.

6.   Insurance.—That soliciting agent, at time of informing insured
     that policy would be in effect from date of application, if he paid
     premium, said nothing about subsequent incumbrance clause, held
     not to show that it was unauthorized, so as to warrant reforma-
     tion of policy so dated back, where insured accepted policy and
     held it for year before fire; his reliance being on policy, not oral
     contract with agent.

T. C. CARROLL for appellant.

F. M. DRAKE and A. E. FUNK, JR., for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Af-
firming.

James P. Lee sued the Hartford Fire Insurance
Company in the Bullitt circuit court for the sum of $2,-
011 as indemnity for the destruction by fire of a dwell-
ing, barn, and certain personal property covered by a
policy in that company.  The defendant answered, plead-
ing a number of affirmative defenses, which were contro-
verted by reply, and upon which, on a jury trial and
under proper instructions, a verdict was returned for
plaintiff for the amount claimed.  Aside from the issues
thus submitted to the jury, the defendant pleaded the fol-
lowing provision in the policy:

> "If the property or any part thereof should
> hereafter become mortgaged or incumbered,  .  .  .
> this policy shall be null and void."

It further pleaded that, after the issual of the policy,
the plaintiff executed a mortgage upon the real property
in the sum of $950.  In the reply it was alleged that, sub-
sequent to the issual of the policy, plaintiff acquired
twelve acres additional land, of the value of $500, and
mortgaged his entire farm for the sum of $950.  This
sum was used to buy the land in question and for im-
provements upon the place, and that the risk was not
materially increased thereby.  He also sought a reforma-
tion of the policy contract by an amended petition, in
which he alleged that he made a written application for
the insurance in question.  At that time he was induced
by the agent to execute an installment note for the entire
amount of the premium upon his assurance that upon the
acceptance of the application by the company the prop-
erty would be insured from its date, and that the policy
was so dated; the further allegation being that, while he

answered a number of questions in the application, no reference was made to an avoidance of the policy by future incumbrances, and that it was understood and agreed between him and the agent that the policy would be issued in accordance with the terms of the application. He received the policy by mail, and deposited it in his local bank without reading it, and that it remained in that place until the fire, which occurred on January —, 1926; that he never learned of the incumbrance clause until after the fire; that this clause was inserted either by mutual mistake of the parties or by mistake on his part and fraud upon the part of the company. The matters set out supra, were considered by the circuit judge after the jury returned its verdict. He refused to reform the insurance contract and dismissed the petition. Plaintiff appeals.

1. The validity of the clause in insurance policies against subsequent incumbrances has recently been upheld by this court. Niagara Fire Insurance Co. v. Mullins, 218 Ky. 478, 291 S. W. 760; Niagara Fire Insurance Co. v. Hankins, 220 Ky. 234, 294 S. W. 1070. And it was there held that such provisions are not controlled by section 639, Ky. Statutes, making certain representations warranties; hence the fact that the proceeds of the debt for which the subsequent mortgage was issued was used in the improvement of the property does not destroy the effect of the provisions against incumbrances.

2. Where there is a valid agreement for insurance, if the policy thereafter issued, either by mutual mistake or mistake on one side and by fraud of the other party, does not conform to the agreement, it may be reformed in a court of equity. Springfield Fire & Marine Ins. Co. v. Snowden, 173 Ky. 669, 191 S. W. 439; Franklin Fire Ins. Co. v. Hewitt, 3 B. Mon. 231; Cecil v. Ky. Livestock Ins. Co., 165 Ky. 211, 176 S. W. 986; Georgia Casualty Co. v. Bond-Foley Lumber Co., 187 Ky. 511, 219 S. W. 442; Girard Fire & Marine Ins. Co. v. Anglo-American Mill Co., 220 Ky. 173, 294 S. W. 1035; Aetna Ins. Co. v. Steele, etc., 222 Ky. 57, 299 S. W. 1091.

But it requires clear and convincing evidence to authorize such reformation. Here the plaintiff made a written application for the policy. It embraced a number of questions as to the then condition of the prop-

erty, title value, et cetera. But it did not undertake to set out any of the terms of the insurance, except the period, premium rate, and property covered. The agent was merely a soliciting agent, and the application as its name implies an offer for insurance to be accepted or approved by the company, which was not precluded from stating the terms upon which it would accept the insurance. It is not claimed that the agent made any representations as to this matter, or that the policy is at variance with his statements; hence it cannot be said that the company acted fraudulently, and, as there is no evidence that it intended to issue the policy without the incumbrance clause, it cannot be said that it was a mutual mistake.

Plaintiff testifies that the agent informed him if he paid the premium his policy would be in effect from the date of the application, and that when issued the policy was so dated, and as nothing was said at the time about the incumbrance clause that clause was unauthorized. We are unable to see the force of this argument. It is true that, when the application was accepted, the policy was properly dated back and covered the interim. Reliance is not had on any parol contract with the agent, but it is based on the written policy, which was accepted by the plaintiff and held for over a year before the fire, and the effort is to reform that instrument. If dissatisfied with its terms, plaintiff could have rejected it in seasonable time, but, by accepting it, and still relying upon it, it must be regarded as the contract between the parties, and, as no grounds for reformation are shown, we need not inquire as to whether plaintiff was negligent in not discovering the incumbrance clause earlier.

In the Snowden case there was no written application, but an oral contract of insurance was entered into, which, as there stated, the parties contemplated later reducing to writing, and which was done. There was no inhibition against additional insurance in the oral contract, and it was held that the insertion of such a clause in the policy was unauthorized, unless the policy was accepted by the insured with the knowledge of the stipulation, or under such circumstances as required him to take notice of it. The difference in the two cases is that here it is not claimed that the soliciting agent who took the application had authority to make an oral contract of insurance, or that he did so, and the entire transaction

shows that the parties did not regard the matter as an oral contract of insurance. In the Cecil case the application provided that the insurance was not to begin until delivery and payment of premium. The application was signed March 26, 1913. It was accepted by the company March 29, 1913. The policy was delivered and premium paid April 1, 1913. However, by mistake of the draftsman the policy was dated March 26, 1913. It was for a period of one year. The horse insured died March 27, 1914, within less than a year after the policy was accepted and delivered, but more than one year after its date. It was held that the proof showed a mistake in the date of the policy, and it was reformed. In Georgia Casualty Co. v. Bond-Foley Lumber Co., supra, the policy contained a clause at utter variance with the agreement between the agent and the insured, the insured's attention not being called thereto, nor was any notice given to the insured of the agent's authority being limited in the matter, and it was held that this contract might be reformed; hence each of those cases is easily distinguished from the one at bar.

Wherefore, perceiving no error, the judgment is affirmed.