## United States Fidelity & Guaranty Company v. Breslin.

(Decided April 19, 1932.)

HITE H. HUFFAKER and JOHN R. MOREMAN for appellant.

LUKINS & JONES and JOSEPH LAZARUS for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

This was an action upon an indemnity insurance contract. Frank G. Breslin sued the United States Fidelity & Guaranty Company to secure indemnity for the amount of a judgment which he had been compelled to pay, together with interest, costs, and expenses. The insurance company interposed the defense that the indemnity contract did not cover cases not occurring at a single location named in the policy, and that the loss in question did not occur at such place, and further that the loss for which indemnity was sought was expressly excluded from the contract by a provision excepting injuries caused by an automobile or truck, and did not result from a casualty covered by the contract. Subsequently the plaintiff amended his pleading seeking to reform the contract of insurance on the ground of mutual

mistake in designating the location where the work was to be done. The action was transferred to equity, the chancellor reformed the contract, and a judgment was rendered in favor of the plaintiff for the full amount claimed. The insurance company has prosecuted an appeal, presenting three questions which will be discussed and disposed of in the order presented.

1. It is first insisted that in order to warrant the reformation of a written instrument on the ground of mutual mistake it is necessary to show the parties had an agreement that was not expressed in the written memorial by reason of mutual mistake of the parties, and that no such agreement was proven in the present case. The general principles which govern the reformation of insurance contracts are well settled and need not be restated. Insurance Company of North American v. Evans, 229 Ky. 613, 17 S. W. (2d) 711; Svea Fire & Life Ins. Co. v. Foxwell, 234 Ky. 95, 27 S. W. (2d) 675; Continental Ins. Co. v. Baker, 238 Ky. 265, 37 S. W. (2d) 62; Springfield Fire & Marine Ins. Co. v. Snowden, 173 Ky. 664, 191 S. W. 439; Kentucky Title Co. v. Hail, 219 Ky. 256, 292 S. W. 817; Kitchen v. Yorkshire Ins. Co., 226 Ky. 376, 10 S. W. (2d) 1074; Lancashire Ins. Co. v. Lucas, 34 S. W. 899, 17 Ky. Law Rep. 1324; Gardner v. Continental Life Ins. Co., 125 Ky. 464, 101 S. W. 908, 31 Ky. Law Rep. 89; National Union Fire Ins. Co. v. Light's Admr., 163 Ky. 169, 173 S. W. 365; Central Life Ins., Co. v. Robinson, 181 Ky. 507, 205 S. W. 589; Kentucky Central Life & Accident Ins. Co. v. Pemberton, 212 Ky. 510, 279 S. W. 968; Westchester Fire Ins. Co. v. Wilson, 220 Ky. 142, 294 S. W. 1059; Ætna Ins. Co. v. Steele, 222 Ky. 57, 299 S. W. 1091; Lee v. Hartford Fire Ins. Co., 223 Ky. 533, 4 S. W. (2d) 372; Harrel's Admr. v. Harrel, 232 Ky. 469, 23 S. W. (2d) 922; Home Ins. Co. v. Evans, 201 Ky. 487, 257 S. W. 22; Cecil v. Kentucky Livestock Ins. Co., 165 Ky. 211, 176 S. W. 986; Georgia Casualty Co. v. Bond-Foley Lumber Co., 187 Ky. 511, 219 S. W. 442.

The parties are not in disagreement respecting the legal principles prevailing. The argument is whether the evidence in the present record is sufficient to warrant a reformation of the contract. The evidence tended to show that Breslin was a general contractor engaged in the construction business in the city of Louisville. He carried various kinds of insurance, among which was a

policy to protect him against liability for injuries to members of the general public. All of his insurance had been carried by a single local agency, but in several different companies. The Union Indemnity Company had carried the public liability risk. That company ceased to carry such business as Breslin offered, and the agent applied to the United States Fidelity & Guaranty Company to take it over since he represented no other company carrying insurance of that character. The insurance desired by Breslin was indemnity against loss from injuries by reason of his operations sustained by any member of the general public. The premium was based upon the entire remuneration earned during the policy period by all persons employed by the assured in all business operations "as expressed in statement No. 4." The policy excluded from its protection any suit based upon injury or death caused by any vehicle or automobile owned, hired, borrowed, or used by the insured. The automobile insurance was carried in another company. Statement No. 4 in the policy read as follows: "Locations of place or places where work is to be done—2705 West Main Street, Louisville, Ky." Immediately following statement No. 4 the policy contained a classification of operations which called for sand and gravel digging, including drivers, chauffeurs, and employees engaged in the construction, repair, and maintenance of buildings, installation of equipment, including machinery, and the office clerical force. As matter of fact, 2705 West Main street was not the place where any work was to be done or any wages were to be earned. It was a former residence of Mr. Breslin and undoubtedly crept into the policy by inadvertence or mistake. If that provision of the policy should be permitted to stand, Mr. Breslin would have no insurance whatever under the policy, and there would be no substantial premium earned for the company. It is shown by the evidence that the United States Fidelity & Guaranty Company undertook to insure against liability occurring at all points where Mr. Breslin was engaged in work, and where any member of the public might happen to sustain an injury. Mr. Breslin desired that character of protection. The premiums were based upon the entire pay roll, including the pay roll at the place where the loss in question occurred.

Alice Schroeder sued Breslin for a personal injury alleged to have been sustained on the sidewalk as the result of a condition caused by sand and gravel being

negligently left thereon by the employees of Breslin. A notice of the action was given to the United States Fidelity & Guaranty Company which showed where the accident occurred, which was at a place near the Brandeis alley job of Breslin. The company took charge of the case without raising any question as to the place of the injury, but did reserve its rights on the ground that the accident was caused by an automobile which was not covered by its policy. The insurance company then called Mrs. Schroeder for cross-examination and developed how and where she was injured. It immediately notified Breslin of its retirement from the case, stating: "It developed in the deposition taken in the case that the gravel which is alleged to have caused the accident was not left on the walk by your workmen in the construction of the alley, but that it fell from one of your trucks loaded with gravel while crossing the sidewalk, and that therefore, if there was any negligence it was the negligent loading and operation of the truck which caused the accident." Mr. Breslin then procured competent counsel to defend the suit, which finally resulted in a judgment against him which he paid, when the company persisted in its position. It will be seen that all the parties connected with the transaction understood that the insurance covered the location of the work where the accident happened and the premium was predicated in part upon the pay roll at that location. There is no doubt that a mutual mistake occurred when the residence number was inserted in statement No. 4, instead of a proper statement to cover the work at all locations. It would be difficult to conceive of a case where the evidence could be more convincing and conclusive that a mutual mistake had occurred. Mr. Breslin had sought and had paid for protection at that point and had labored under the belief that he had procured such protection. His regular insurance agent had procured and delivered the policy for the purpose and under the belief that it covered work at all places in the city. Appellant's agent endeavored to protect Mr. Breslin against such liability and collected a premium therefor. The denial of liability was based upon the ground that the accident was caused by an automobile. The statement in the notice that the liability was denied because of the particular condition stated, "and other good and sufficient reasons," did not direct attention to the error in describing the location. It was but a generalization

meant to embrace any new ground of defense that might be discovered. But if it had been addressed to the particular point now urged, it could not have affected the clear right to a reformation of the contract to conform it to the true agreement of the parties. We conclude that the chancellor ruled correctly in reforming the policy, since there was no evidence whatever to raise a doubt about the desire and intention of the parties to cover the case in question by the policy issued.

2. The second proposition argued is that the injury to Mrs. Schroeder was caused by a negligent operation of trucks which was expressly excluded from the policy. We have already mentioned the provision of the policy which excluded indemnity because of any suit based upon injury and death, or either, caused by an automobile owned, hired, borrowed, or used by the insurer. The evidence showed that the alley in the rear of East Brandies street was being constructed by Mr. Breslin, and material was transported by trucks across the sidewalk. It is likely that the tailgates of the trucks were not tightly closed, or that the trucks were overloaded so that sand and gravel fell to the sidewalk. The question presented is whether the injury to Mrs. Schroeder, which was caused by her falling on the sidewalk as a result of the dangerous condition created by the sand and gravel, was excluded from the protection of the policy by the provision mentioned. Obviously the policy excluded liability for any loss based upon injury or death, or both, caused by an automobile coming in collision with the injured party. But it did not exclude injuries caused by a fall on the sidewalk, even though the fall resulted from conditions created by sand and gravel which had fallen from an automobile. The injury to Mrs. Schroeder was not one caused by an automobile. The injury was caused by a fall upon the street. The automobile insurance covered injuries resulting from accident by automobile. But it did not cover an injury which resulted from a condition created incidentally by the use of the automobile. The condition could have been created by other means. It might as well be said that a person falling into an excavation was injured by an automobile because the excavated material had been hauled away by the automobile.

It is clear that the company was in error in declining to defend the suit based upon an injury to a member of

the public by a fall upon the sidewalk. The part played by the automobile merely contributed to create the condition, and was not a cause of the injury. Cf. Louisville & N. R. Co. v. Napier, 223 Ky. 417, 3 S. W. (2d) 1070, 64 A. L. R. 513; Gaines' Admx. v. City of Bowling Green, 235 Ky. 800, 32 S. W. (2d) 348; Shafer v. Chesapeake & O. Ry. Co., 228 Ky. 219, 14 S. W. (2d) 780.

3. The final argument is that the testimony as to the conduct of the appellant in auditing all the books of Mr. Breslin, for the purpose of ascertaining the amount of premium to be paid, was incompetent and immaterial. The policy provided that an estimated premium should be paid upon demand, and that additional premiums should be charged and collected upon the basis of the pay roll as explained in condition B of the policy, referred to earlier in this opinion. The company did audit the pay roll and rendered bills to Breslin for the additional premium based thereon. The bills were approved and paid, and their accuracy is not assailed. What the books contained was not in issue, but the fact was pertinent that the books had been used by the appellant to ascertain the entire amount of the pay roll as a basis for its bills. The statements rendered by the company clearly show the foundation of the bills. It was not the contents of the pay roll and the books audited that was to be proven in this case, but the fact that the insurance company caused its agents to examine the original books and the pay roll in order to ascertain the amount of premium to be paid. The pay roll applied to all the various places where the work was done, and the company collected premiums accordingly. Certainly the company was aware that no work was being done at the residence mentioned in the policy in statement No. 4. If the books had been demanded and produced, no light could have been cast upon the conduct of the appellant. The appellant did not demand the books, as it had previously audited them. The books could serve no possible purpose in this record, since the bills rendered supplied all the information that was needed. The source of that information was not material or important when its accuracy was conceded. There was no error in the admission of evidence.

The judgment is affirmed.