## MARYLAND CASUALTY CO. v. SCHARLACK.

### No. 21.

District Court, S. D. Texas, Corpus Christi Division.

Nov. 8, 1939.

R. H. Mercer, of San Antonio, Tex., and Lewright, Dyer & Sorrell, of Corpus Christi, Tex., for plaintiff.

Eskridge & Groce and Josh H. Groce, all of San Antonio, Tex., and James M. Easterling, of Corpus Christi, Tex., for defendant.

ALLRED, District Judge.

This suit was brought February 2, 1939, by plaintiff, a Maryland corporation, against defendants, resident citizens of Texas, under the declaratory judgment law (Sec. 400, Title 28 U.S.C.A.).

The principal facts have been stipulated and submitted to the court upon briefs, with, however, the following express provisions: "That the Court shall consider that the *defendants* have demanded a jury and if, in the opinion of the Court there is *any question of fact to be submitted to a jury*, then the Court shall submit such fact issue to a jury; and in the event the Court

shall be of the opinion that there are no fact issues to be submitted to a jury, he shall so find and the defendants shall be entitled to except to such finding." (Italics mine).

■ In the opinion of the court there is no question of fact to be submitted to a jury. This will, I think, be clearly evident from a complete statement of the case.

On January 31, 1937, plaintiff issued its policy of Owners', Landlords' and Tenants' *Public Liability Policy*, effective for one year, covering a three-story office building in Corpus Christi, owned by defendant L. J. Scharlack, agreeing generally to indemnify and defend the insured from public liability. Under "General Insuring Agreements" is found the following provision: "Subdivision VII. This policy does not cover: (1) (a) any obligation assumed by the Assured under any contract or agreement, oral or written, for the liability of others, (b) any obligation assumed by or imposed upon the Assured under any Workmen's Compensation Agreement, Plan, or Law; nor any accident *caused directly or indirectly by* (2) any person employed by the Assured contrary to law as to age of employment, or under the age of sixteen (16) years where there is no such age restriction; (3) or *resulting from* additions to, structural alterations in, or extraordinary repairs of the premises or any part thereof, or of any elevator, or any elevator plant, its shaft or equipment, or any part thereof, unless a written permit, specifically describing such work, shall have first been granted by the Company, and attached to, identified with, and made a part of this policy, except that ordinary repairs may be made without such permit; (4) any elevator not listed and described in the Schedule hereof, or by its shaft, equipment or any part thereof, or by the use or operation thereof; * * *"; (italics mine) ; and other provisions not pertinent here.

In the fall of 1937, while the policy was in force, defendant L. J. Scharlack entered into a contract for substantial repairs and alterations on the first floor of the building, which "for the purposes of this case the defendants" in their brief "agree were structural alterations or extraordinary repairs within the meaning of the above clause of the policy."

The entire building was heated by steam pipe fittings, and in connection with the alterations and extraordinary repairs, it became necessary to disconnect and take out the steam return lines in order to lower the floor of the building since the pipes were fastened to the bottom of the old wood floor. When the old floor was taken out, the pipes had to come with it. Defendant Scharlack planned to use copper pipes under the new concrete floor for water and gas service and to place the return on the steam pipes in a new false ceiling directly under the second floor. No written permit was granted by plaintiff Casualty Company specifically describing the structural alterations and extraordinary repairs undertaken by defendant Scharlack.

While the structural alterations and extraordinary repairs were under way, the building was without heat. On November 19th some of the tenants on the upper floors (where no work was being done) complained that they were entirely without heat and notified Scharlack that they would refuse to pay rent and would hold him liable if they, or any of their employees, were made ill by lack of heat.

On November 21, 1937, while the repairs were still being carried on, a severe cold spell struck Corpus Christi. The building manager placed electric heaters in the offices but they burned out the fuses. He then bought approximately eighteen charcoal burners which were used for some three or four days. Kerosene oil was poured on the charcoal and lighted with matches. The burners would not have been used to heat the upper floors of the building had it not been for the fact that there was no heat in the building at that time.

The charcoal burners gave off injurious fumes in the offices on the second and third floors. Five of the original defendants in this case brought suits for damages against Scharlack in the state court. Plaintiff was duly called upon by Scharlack to defend these suits but the company disclaimed liability in writing, the disclaimer reading in part as follows: "Our investigation reveals that this suit and the other claims are based on conditions that were a *direct result* of extraordinary repairs or structural alterations of the premises insured and the policy * * * affords no protection under such circumstances. We respectfully refer you to General Insuring Agreements, Subdivision VII, *Section 3*. We must, therefore, at this time for that reason and *for other reasons* disclaim all liability to you under said policy for this suit and any other suits or claims that may arise

from the conditions complained of in this suit." (Italics mine).

Suits by other tenants were filed against Scharlack, and plaintiff again denied liability on the same grounds.

Plaintiff points to the fact that in some of the original pleadings filed in the state court the tenants, as plaintiffs there, set up the fact that alterations were being made in the building, resulting in the steam heat being cut off and that, as a result thereof, Scharlack sought to remedy the situation by providing gas burners. Defendants say that in the amended pleadings by the plaintiffs in the state court no mention was made of the alterations and repairs. This is immaterial, however, since an examination discloses that the cause of action in the suits filed in the state court was based upon the alleged negligence of Scharlack in furnishing charcoal burner heaters which threw off carbon monoxide fumes.

The state court suits resulted in judgments against defendant Scharlack totaling $6,500. It has been stipulated that these amounts were reasonable; and that defendant L. J. Scharlack has paid out the reasonable sum of $1,025 in attorneys' fees in defending the actions in the state court.

As originally brought, plaintiff asked for an injunction restraining the further prosecution of the suits in the state court, which application was refused by the Senior Judge of this court. The defendant Herman Glosserman, prior to the institution of this suit, acquired the judgments in favor of the plaintiffs in the state court suits.

As originally filed, plaintiff alleged collusion in the obtaining of the judgments in the state court, but this has been abandoned; and the parties have stipulated that all matters in controversy between the parties shall be settled in this suit and that affirmative relief may be granted based upon this court's findings, either for plaintiff or for defendants, upon the cross-action of Scharlack for $1,025 and Herman Glosserman for $6,500.

The stipulation concludes with the following: "That the only question for determination by the Court herein is whether or not the facts stipulated bring the Maryland Casualty Company within the exceptions set out in Paragraph VII of the policy."

■ The major portion of plaintiff's original brief is devoted to a discussion of the evidence demonstrating that the repairs and alterations undertaken by Scharlack were "structural alterations in, or extraordinary repairs" coming within the exclusion provisions of the policy. This is correct, United States Fidelity & Guaranty Co. v. Southland Life Ins. Co., 5 Cir., 22 F.2d 731, but the question has been eliminated in view of defendants' admissions in the brief.

■ Plaintiff's next contention is that, as applied to the facts in this case, the exclusion provisions of Subdivision VII should read: "This policy does not cover: * * * any accident * * * *directly or indirectly* * * * resulting from additions to, structural alterations in or extraordinary repairs." (Italics mine).

In other words, plaintiff contends that the words "directly or indirectly" appearing in sub-paragraph (1) of the exclusion clause should be read into sub-paragraph (3) as well as sub-paragraph (2), which immediately follows the words "directly or indirectly". Plaintiff says that the accidents, which resulted in judgments against Scharlack in the state courts, *"indirectly,"* if not *"directly,"* resulted from the structural alterations and extraordinary repairs. The construction urged is highly important under the peculiar facts in this case.

The word "indirectly" is defined by Webster as "not resulting directly from an act or cause but more or less remotely connected with or growing out of it." This definition has received approval in Amicable Life Ins. Co. v. O'Reilly, Tex.Civ.App., 97 S.W.2d 246, 247, writ of error dismissed: " 'Indirect' means not direct; * * * circuitous, oblique; as, an indirect road; not leading to an aim or result by the plainest cause or method or by obvious means, but obliquely or by *remote* means; roundabout; not resulting directly from an act or cause, but more or less *remotely connected with or growing out of it* * * *." (Italics mine).

■ 24 Tex.Jur., § 29, p. 705, summarizes the rule for construction of insurance policies:

"It is a settled principle of insurance law, laid down in a host of decisions, that language of a policy which is susceptible of more than one construction should be interpreted strictly against the insurer and liberally in favor of the insured.

934

" 'Insurance companies form their own policies, use their own language, except when compelled by a legislature to use a standard policy, insert their own complicated, and in some instances obscure and oracular, conditions, and courts uniformly give the insured the benefit of any doubt in the construction of the terms used in such policy.'

"In other words, when the contract is capable of two constructions, under one of which recovery is allowed but under the other of which it is denied, that construction will be given which permits a recovery. And where two interpretations, equally fair, may be made,. that which allows the greater indemnity must prevail. However, the rule as to interpretation in favor of the insured is invoked only where there is ambiguity calling for construction * * *"

Again, § 28, p. 704, 24 Tex.Jur., reads: "Like provisions for forfeiture, exceptions and words of limitation in the nature of an exception are strictly construed against the insurer, especially if of uncertain import or reasonably susceptible to a double construction."

Even a casual reading of the exclusion paragraph in the policy demonstrates that it is "of uncertain import and reasonably susceptible to a double construction." The most that can be said of it, favorable to the insurer, is that it is not clear whether the words "directly or indirectly" limiting the words "caused by" likewise limit the subsequent words "resulting from," appearing in a separate numbered sub-section of the exclusion clause and separated from the preceding sentence by a semicolon. It is to be noted that the exclusion clause does not read, "This policy does not cover any accident *directly or indirectly caused by or resulting from* * * * (2) * * *; (3) * * *; (4) * * *."

In other words, if the words "directly or indirectly" had been placed in front of the words "caused by," and the words "or resulting from" had immediately followed, there would have been no doubt that it would have applied to each of the succeeding numbered sub-sections.

In an effort to clear the meaning, I have resorted to diagraming. When the old rules of grammar are applied in this diagram, it clearly appears that the word "caused" is limited by the words "directly or indirectly" but that the word "resulting" is on an equal footing with the word

"caused" and does not refer back to and is not limited by "directly or indirectly."

Placing this construction upon the paragraph, I find that each of the remaining paragraphs, (4), (5), (6) and (7) are better understood and controlled by the words "resulting from."

Applying the rule which requires a construction favorable to the insured in cases of "uncertain import," I conclude that the words "directly or indirectly" apply to and limit only the phrase, "any accident caused directly or indirectly by (2) any person employed by the Assured contrary to law as to age of employment, or under the age of sixteen (16) where there is no such age restriction"; and do not apply to, limit or restrict the succeeding numbered sub-section (3), "or resulting from additions to, structural alterations in or extraordinary repairs of the premises, or any part thereof * * *."

The general insuring and indemnity provisions of the policy are broad. The purpose of the exclusion clause as to "structural alterations" or "extraordinary repairs" of the premises was, of course, that the insurer should not be subjected to the unusual hazards of such an undertaking without compensation therefor. Certainly, since Scharlack did not secure a written permit for the repairs from plaintiff, a person injured by falling timber or by stumbling over debris, etc., could not recover on the policy. It is equally clear that, under ordinary circumstances, if the steam heating apparatus had suddenly become unworkable from other causes, thus making it necessary for Scharlack to furnish heat by means of charcoal burners, plaintiff would have been liable for Scharlack's negligence in respect to the burners.

Now, plaintiff says that since the alterations were undertaken on the first floor which put the steam heating unit out of operation and a severe cold wave followed, electric heaters having failed, the insurer is not liable because Scharlack installed the charcoal burners, as a result of the alterations which took the regular heating unit out of operation. This is rather a circuitous, a remote and roundabout road, possibly "more or less remotely connected with or growing out of" the original act of making the alterations without a written permit. It may be that the injuries resulting to the state court claimants were *indirectly* caused by Scharlack undertaking the repairs without a written permit.

It must be borne in mind, however, that the causes of action asserted in the state courts were based not upon any negligence, direct or indirect, *in making the alterations* but upon Scharlack's *negligence* in the matter of *furnishing charcoal heaters which threw off carbon monoxide fumes.* It is questionable whether these causes of action resulted even indirectly from the alterations; they may have; but, in my opinion it is too far fetched to discharge the insurer where the exclusion provisions are susceptible of two interpretations, equally fair, one of which allows, and the other defeats, recovery.

Defendants have cited a number of cases from other states, not entirely decisive but persuasive of the issues, construing similar exclusion clauses, in public liability and automobile insurance policies. Among these cases are: United States Fidelity & Guaranty Co. v. Breslin, 243 Ky. 734, 49 S.W.2d 1011, 1013, holding that a pedestrian falling while crossing a sidewalk because of gravel which had fallen from a motor truck was within the protection of an *indemnity* policy, notwithstanding the policy excluded injuries "caused by an automobile owned, hired, borrowed, or used by the insurer"; Zurich General Accident & Liability Ins. Co., Ltd., v. American Mut. Liability Ins. Co. of Boston, 118 N.J.L. 317, 192 A. 387, holding an insurer not liable under a *Public Liability Policy* excluding accidents arising in connection with the maintenance, use or operation of motor vehicles where a customer was injured as assured's employee put ice, which had been taken from a truck, into an ice box in the customer's store; Caron v. American Motorists Ins. Co. et al., 277 Mass. 156, 178 N.E. 286, holding an insurer not liable on an automobile insurance policy for injuries to a person who slipped on ice which had fallen to the street from a parked ice truck; J. T. Hinton & Son v. Employers' Liability Assur. Corp., Ltd., 166 Tenn. 324, 62 S.W.2d 47, holding an insurer not liable on an automobile policy for injuries sustained by a person being carried on a stretcher from a house to the insured's automobile; Luchte v. State Automobile Mutual Ins. Co., 50 Ohio App. 5, 197 N.E. 421, holding an insurer not liable on an automobile policy for death of motorcyclist who collided at night with coal dumped from a truck and negligently left in the street; Morgan v. New York Casualty Co., 54 Ga.App. 620, 188 S.E. 581, holding the insurer not liable on an auto-mobile policy for injuries to a person falling into an open coal chute into which insured's employees were unloading coal; Franklin Co-op. Creamery Ass'n v. Employers' Liability Assur. Corp. et al., 200 Minn. 230, 273 N.W. 809, holding insurer not liable on vehicle policy for injury caused to a person in the building when the vehicle driver pulled on a freight elevator cable for the purpose of using the elevator to reach retail customers on the upper floor; Stammer v. Kitzmiller et al., 226 Wis. 348, 276 N.W. 629, holding insurer not liable on an automobile policy for injuries to a pedestrian who fell into a hatchway in the sidewalk left open by insured's employee after delivering beer through it.

Being of the opinion that the injuries sustained by the state court plaintiffs resulted from the negligence of Scharlack in providing charcoal burners which threw off carbon monoxide fumes, and did not result from the "structural alterations in or extraordinary repairs of the premises," undertaken without a written permit, decree will be for the defendants.

Let an order be prepared in accordance with this memorandum.