The EMPLOYERS' LIABILITY ASSURANCE CORP., Ltd., Plaintiff,

v.

INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, and Charles W. Ireland, Defendants.

Civ. A. No. 13902.

United States District Court
D. Maryland.
May 5, 1964.

W. Ireland against the Procter and Gamble Manufacturing Company (hereafter called "Procter and Gamble"), in the Superior Court of Baltimore City, and to respond to any verdict the plaintiff may obtain. If it should be concluded that both insurers have obligations in those regards, a declaration is sought as to the proportion in which their obligations exist.[1]

The Employers' Liability Assurance Corp., Ltd. (hereafter called "Employers' ") issued a comprehensive liability policy to Procter and Gamble. Indemnity Insurance Company of North America (hereafter called "Indemnity") issued an automobile liability policy to Kane Transfer Company. On July 19, 1960, Defendant Ireland, an employee of Kane Transfer Company, was sent to a warehouse, at Pier 3 Pratt Street, Baltimore, occupied by Procter and Gamble under sublease, to pick up a load of soap. The warehouse had an overhead door and, in order to load the truck, it was necessary that the truck be backed to the warehouse opening and the door raised.

Precisely how the door was raised is not clear, because Defendant Ireland, in an appearance before the Workmen's Compensation Commission of the State of Maryland, testified to one version of the ensuing accident and, in a discovery deposition in the suit which he subsequently filed against Procter and Gamble Manufacturing Company, in the Superior Court of Baltimore City, testified to a different version. For the purposes of this case, the correct version is not an issue or material.

By one version, an employee of Procter and Gamble opened the warehouse door with a fork lift truck customarily used to move loads of soap. That employee then instructed Defendant Ireland's helper on the Kane truck to put a prop under the open door. By the other version, Defendant Ireland raised the door above the safety catch at the top of the door

Alva P. Weaver, III, and Robert E. Coughlan, Jr., Baltimore, Md., for plaintiff.

Herbert F. Murray, Baltimore, Md., for defendant Indemnity Ins. Co. of North America.

Max R. Israelson, Baltimore, Md., for Charles W. Ireland.

WINTER, District Judge.

This declaratory judgment action is brought to determine which insurer is obligated to defend a suit for personal injuries brought by Defendant Charles

---

1. Suit is brought under 28 U.S.C.A. § 2201. Jurisdiction is grounded on diversity of citizenship between all parties and the amount in controversy, 28 U.S.C.A. § 1332.

and put a block underneath to hold it. In either event, it is certain that when the door was raised to the level of the safety catch at the top, the opening was insufficient to accommodate the full height of the load so that the door was raised above the safety catch and propped into that position by the use of a wooden block to facilitate loading.

After the door was opened, the employee of Procter and Gamble, again with the use of the fork lift truck, deposited a load of soap on the truck. That employee drove off into the warehouse to write up a ticket for the load. The articles on the truck began to shift, whereupon Defendant Ireland stood beside the load to hold it in place. At that time, for reasons unknown, but not claimed to be any striking or jarring of the door, the overhead door fell, striking Defendant Ireland and causing personal injuries. Defendant Ireland has received Workmen's Compensation benefits, but he has sued Procter and Gamble for $50,000.00 upon allegations of negligence in failing to secure the door, failing to discover a dangerous condition on its premises, and failing to warn him of a dangerous condition on the premises.

When the suit in the state court was filed by Defendant Ireland, demand was made upon Indemnity to defend. When Indemnity declined the demand, Employers' began the defense of the suit and instituted this proceeding for a determination of the rights of the parties.

Employers' policy insures Procter and Gamble, and its constituent companies, against bodily injury liability to the extent of $200.00 per person per occurrence. Indemnity's policy, stripped of unnecessary verbiage, insures Kane Transfer Company, Procter and Gamble,[2] and others, against all sums which they shall become legally obligated to pay as damages because of bodily injuries "arising out of the * * * use of any automobile," to the extent of $100,000.00 for

bodily injury per person per occurrence. Both policies contain the customary provisions obligating the insurer to defend the persons insured against any claim alleging injury with respect to insurance afforded by the policy.

The crucial language in Indemnity's policy for the first issue which this case presents is the definition of "use" which, by the terms of the policy, is defined: "Use of an automobile includes the loading and unloading thereof." Thus, the first question to be determined is whether Indemnity could be liable under its policy, within the limits of coverage, to pay damages on behalf of Procter and Gamble and also to defend Procter and Gamble in the suit filed against it by Defendant Ireland. If this question is answered in the affirmative, the next question presented is what proportion (if less than all) of the costs of defending Procter and Gamble, including the costs of litigation and reasonable attorneys' fees incurred to date, and any judgment rendered against it, must be paid by Indemnity.

### I

There are many authorities which consider the scope of coverage to be afforded an automobile insurance policy provision insuring against liability for bodily injury arising out of the loading and unloading of any automobile. These authorities are not harmonious. Any consideration to be given to them must recognize two basic distinctions.

 The first distinction is that there is a difference between a policy which affords coverage for bodily injury sustained as a result of the "ownership, maintenance and use" of a motor vehicle, but which does not expressly mention loading or unloading operations, and one which expands the definition of use to include loading and unloading. The cases construing the former require that before coverage is found to exist there must be a showing of a causal relationship be-

---

2. The pleadings disclose an issue as to whether Indemnity's policy, if otherwise applicable, covers Procter and Gamble.

Indemnity now concedes that Procter and Gamble is a named insured and is not excluded by any exceptions to the policy.

tween the vehicle and the ensuing injury. John Alt Furniture Co. v. Maryland Casualty Co., 88 F.2d 36 (8 Cir. 1937), is typical of this line of authorities. There, an accident occurred in the course of delivery of furniture to the second floor of an apartment building. The furniture had been transported in the insured truck. To carry the furniture from the truck to the second floor, employees removed a door from the rear of the building and leaned it against a clothes pole in the back yard. The door fell, striking and injuring a tenant. Coverage was found not to exist, because the Court concluded that the accident was not caused by a vehicle. Conversely, where the insurance policy defines "use" to include the loading and unloading of the vehicle, as in the case at bar, the insurance protection afforded is broadened. This point is best established by comparing the Alt Furniture case, supra, with Lumbermens Mut. Cas. Co. v. Employers' L. Assur. Corp., 252 F.2d 463 (1 Cir. 1958), which are similar on their facts. In the Lumbermens case, a truck was dispatched to move furniture from a second floor apartment. The truck was parked at the curb on a public street adjacent to the premises from which furniture was to be removed. It became necessary to lower a divan from the second floor porch to the ground by the use of a web strap. During this operation the plaintiff, who was assisting in this operation, fell from the porch, sustaining personal injuries. Applying the test that the plaintiff's activities were necessary in order to carry out the delivery, and that they were an integral part of the unloading process, the Court concluded that the policy protected the insured. Indeed, the Court specifically stated (252 F.2d p. 465) that the "loading and unloading clause" was intended to broaden the definition of the use of a motor vehicle. Because of the distinction between policies the protection of which is limited to use, and policies the protection of which is expanded to include loading and unloading, the Alt Furniture case, supra, cited and relied on by Indemnity, is clearly distinguishable

from the case at bar, as is United States Fidelity & Guaranty Co. v. Breslin, 243 Ky. 734, 49 S.W.2d 1011 (1932), which concerned an exclusionary clause excluding damages resulting from the use, ownership and operation of an automobile.

A second distinction which must be observed is to distinguish between the jurisdictions which have adopted the "coming to rest" doctrine and those which have adopted the "complete operation" doctrine. See discussion, Raffel v. Travelers Indemnity Co., 141 Conn. 389, 106 A.2d 716 (1954), and American Auto Ins. Co. v. Master Bldg. Supply & Lbr. Co., 179 F.Supp. 699 (D.C.Md.1959). The former is a doctrine of narrow construction, and has been held to embrace only the operation of taking the goods from the vehicle to a place of rest out of the vehicle, while the latter is a doctrine of broad construction, and it holds that any occurrence during, or arising out of, the process of loading or unloading is covered, 7 Appleman, Insurance (Rev. ed. 1962), § 4322; 6 Blashfield, Cyclopedia of Automobile Law (Part I Perm. ed., 1945), § 3972.5. In the Master Bldg. case, supra, Chief Judge Thomsen has held that, in the absence of any specific Maryland decision, the "complete operation" doctrine would be applied by the Maryland courts. I agree that this doctrine would be applied in a case like that at bar.

While temporally the accident here occurred before the soap had been fully secured on the truck, so that it may be argued that the loading was not completed and the distinction between which of the "coming to rest" or "complete operation" doctrines is the law of Maryland is not important, a distinction between the two is highly important. This is so because the "complete operation" doctrine, besides extending to acts and events causing bodily injury occurring in point of time after loading or unloading has been completed, represents a difference in the quantum and type of causation required to render applicable insurance coverage for loss arising from the loading and unloading of a vehicle. Thus,

even where the loading and unloading clause is involved, the "coming to rest" doctrine seems to insist upon a causal connection between the injury and the use of the vehicle insured, or that the vehicle was an active factor in the loading or unloading operation which caused the injury, 7 Appleman, supra. Typical of such cases in denying coverage is Ferry v. Protective Indemnity Co. of New York, 155 Pa.Super. 266, 38 A.2d 493 (1944), where a truck driver removing ashes from a basement lifted a sidewalk door and injured a pedestrian; Kaufman v. Liberty Mutual Insurance Company, 264 F.2d 863 (3 Cir. 1959), where an employee of a beer distributor negligently opened a cellar door set in a sidewalk in order to deliver a barrel of beer, which had been removed from the truck and placed on the sidewalk, into the premises, with the result that a pedestrian was injured;[3] Handley v. Oakley, 10 Wash. 2d 396, 116 P.2d 833 (1941), where a small boy was injured by a baseball while receiving some ice cream from a truck parked near an athletic field during a Labor Day celebration; Franklin Co-op. Creamery Ass'n. v. Employers' L. Assur. Corp., 200 Minn. 230, 273 N.W. 809 (1937), where a milk man making a delivery injured an employee in a building when he pulled an elevator cable to start a freight elevator motor in order to get to the upper floor; and Hartford Accident & Ind. Co. v. Fireman's Fund Ind. Co., 298 F.2d 423 (7 Cir. 1962), where a delivery man for liquid gas negligently turned on a gas valve at the wrong house, with the result that there was an explosion and the house was destroyed. See also, Pavlik v. St. Paul Mercury Insurance Company, 291 F.2d 124 (7 Cir. 1961).

■ Conversely, in "complete operation" jurisdictions, all that is required to establish coverage is that the act or omission which resulted in the injury was necessary to carry out the loading or unloading. Lumbermens Mut. Cas. Co. v. Employers' L. Assur. Corp., supra, has already been cited. To this should be added Connecticut Indemnity Co. v. Lee, 168 F.2d 420 (1 Cir. 1948). In the latter case, a truck was stopped in front of a building so that the driver could make deliveries of merchandise to a tenant. It was necessary for him to use an elevator, the entrance doors of which, when closed, formed a part of the public sidewalk. After opening these doors the driver returned to the truck to get the merchandise and one of the doors, on which a pedestrian was standing, fell down the open elevator well, causing the pedestrian to be injured. The Court held that coverage was afforded under the loading and unloading provision of the trucker's policy, because there was a causal relation between the unloading and the accident. Similarly, coverage was found to be present in the following cases: R. H. Macy & Co. v. General Accident Fire & L. Assur. Corp., 4 Misc.2d 89, 148 N.Y.S.2d 10 (1955), where an employee of the seller of merchandise was injured by a defective skid used to remove television sets from a truck to a warehouse, although coverage was denied for failure to give notice; and Columbia So. Chemical Corp. v. Manufacturers and Wholesalers Ind. Exch., 190 Cal.App.2d 194, 11 Cal.Reptr. 762 (1961), where a truck driver loading soda ash onto his truck was injured by a defect in the rope holding a flexible loading spout. See also, Federal Insurance Co. v. Michigan Mutual Liability Co., 277 F.2d 442 (3 Cir. 1960), where the rear wheels of a trailer had been removed to facilitate unloading it and then a crane was used to lift the trailer to replace the wheels, when the crane struck a high tension wire and the truck driver was injured. See also, Risjord, Loading and Unloading, 13 Vanderbilt Law Rev. 903 (1960); Pepsi-Cola

---

3. While Kaufman v. Liberty Mutual Insurance Company, supra, disavows making a choice between the conflicting doctrines and asserts that the Ferry case, supra,. made no such choice, it relies on Ferry which in turn relied on Stammer v. Kitzmiller, 226 Wis. 348, 276 N.W. 629 (1939), the leading "coming to rest" case.

Bottling Co. of Charleston v. Indemnity Ins. Co., 318 F.2d 714 (4 Cir. 1963); Selected Insurance Co. v. Hartford Accident & Indem. Co., 213 F.Supp. 3 (D.C. E.D.Mich.S.D.1963); St. Paul Mercury Insurance Company v. Huitt, 215 F.Supp. 709 (D.C.W.D.Mich.S.D.1963).

▮ Concluding that Maryland is a "complete operation" state, I conclude that Procter and Gamble is covered by Indemnity's policy in the case at bar, because to me it is manifest that the raising and securing of the warehouse door was a necessary and integral part of loading the truck of Kane Transfer. Any negligence on the part of Procter and Gamble in failing to secure the door, in failing to disclose a dangerous condition on its premises, or in failing to warn Defendant Ireland of a dangerous condition on its premises, which may be proved by Defendant Ireland, in the Superior Court of Baltimore City, would have a causal relation with the loading of the Kane truck within the meaning of Indemnity's policy.

The remaining authorities cited by Indemnity do not require a different conclusion. Cosmopolitan Mut. Ins. Co. v. Baltimore & Ohio R. C., 18 A.D.2d 460, 240 N.Y.S.2d 88 (1963), concerned a fall by a delivery man due to the fact that the flooring on which he was walking was broken. As the Court pointed out, while temporally the accident occurred while a loading and unloading process was being carried on (240 N.Y. S.2d p. 92), "[t]he accident was one that could have happened to anyone walking upon the platform or pier whether or not he was engaged in unloading goods from a standby vehicle." In General Accident Fire and Life Assur. Corp. v. Brown, 35 Ill.App.2d 43, 181 N.E.2d 191 (1962), an employee in stepping from a loading dock to a truck, fell and was injured. He claimed that his fall was caused by a defective condition of the dock and the negligence of the owner of the premises in failing to maintain it. The Court held that the accident was not the result of the loading or use of the truck, but was caused directly by some independent factor or intervening cause wholly disassociated with and remote from the use of the truck. Also cited is Clark v. Travelers Indemnity Company, 313 F.2d 160 (7 Cir. 1963), where the failure of a pump to cut off while pumping gasoline into a truck caused a quantity to be spilled. The spilled gasoline could not be washed away from the loading area because ice and snow had clogged the drains at the pumping station. Here again, it was found that the efficient cause of a subsequent explosion was not the loading operation.

In the case at bar, the warehouse door was raised because of the loading operation and not incidentally at the time of the loading operation. If there was a defect in the door the defect was made operative because of the loading operation and not incidentally at the time of the loading operation. These factors, it is believed, serve sufficiently to show that Indemnity's three last cited decisions are inapplicable.

II

Having concluded that Indemnity's policy affords protection to Procter and Gamble, the next matter to be examined is the interrelation between that protection and the protection afforded by Employers' policy. The answer to this question lies in a construction of the "Other Insurance" provisions of both policies.

Employers' policy provides that if the insured (Procter and Gamble) has other insurance protecting against a loss covered by the Employers' policy, the Employers' policy shall be null and void with respect to such loss, provided that if the applicable limit of liability of the other insurance is not enough to protect Procter and Gamble against such loss, Employers' policy shall be excess insurance.[4]

4. The actual language employed in Employers' policy is:
"Other Insurance. If other valid and collectible insurance exists protecting the insured against a loss covered by this policy, this policy shall be null and void with respect to said loss whether the insured is specifically named in such oth-

Indemnity's policy provides that the protection which it affords, in a situation like that in the case at bar, shall be on a pro rata basis in the proportion that the applicable limit of liability in Indemnity's policy bears to the total applicable limit of liability of all insurance affording protection against the loss which has been claimed.[5]

■ Obviously, the "Other Insurance" provision of Indemnity's policy has application only when more than one policy is applicable to the loss against which Indemnity has insured. But, by its terms Employers' policy has no application where there is other valid and collectible insurance—in this case that of Indemnity—protecting the insured against a loss covered by Employers' policy. Under these circumstances, Indemnity is the sole insurer, and Indemnity is the only insurer which has covenanted to defend,[6] McFarland v. Chicago Exp., 200 F.2d 5 (7 Cir. 1952); Citizens Mutual Ins. Co. v. Liberty Mutual Ins. Co., 273 F.2d 189 (6 Cir. 1959); Allstate Insurance Company v. National Trailer Convoy, Inc., 295 F.2d 243 (6 Cir. 1961); American Universal Insurance Company v. Dykhouse, 219 F.Supp. 62 (D.C.N.D. Iowa W.D.1963). While there is authority that when two insurers have included "other insurance" provisions in their policies so that there is a conflict between an "escape" clause, like that in the Employers' policy, and a "pro rata" clause, like that in Indemnity's policy, both clauses should be rejected and both insurers should be held equally liable for any loss which the insured might sustain, Continental Cas. Co. v. General Acc. Fire & Life Assur. Corp., 175 F.Supp. 713 (D.C.Ore.1959), there is nothing in the Maryland law of which I am aware which requires me to reach this result and, absent such a compulsion, no reason occurs to me why I should deny to Employers' and Indemnity the right to draft their respective insurance contracts in the manner they have followed and to afford their language its literal meaning. Since Employers' policy is excess insurance, and in this case only theoretical excess insurance, it follows that Employers' is entitled to reimbursement for attorneys' fees and costs which it has expended to date, in the amount of $740.20.[7]

Counsel may prepare a form of order in accordance with the views expressed herein.

er policy of insurance or not; provided, however, that if the applicable limit of liability of such other valid and collectible insurance is not sufficient to protect the insured against such loss, this policy shall apply, but only as excess insurance over such other valid and collectible insurance in an amount equal to the applicable limit of liability of this policy and not as a contributing insurance."

5. The actual language employed in Indemnity's policy is:
 "Other Insurance. If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance."

6. Legally, Employers' policy can become excess insurance. But in the case at bar Indemnity's coverage is $100,000.00, and the ad damnum clause in the declaration in the suit in the Superior Court of Baltimore City claims $50,000.00, so that as a practical matter Employers' policy cannot be excess insurance.

7. The parties have stipulated the reasonable value of counsel fees to date in the defense of the suit in which Defendant Ireland is plaintiff is $610.00. $72.00 has been expended in the taking of one discovery deposition, and $58.20 in obtaining copies of another.